STATE *v.* GENNETT.

[Cite as State v. Gennett, 6 Ohio Misc. 176.]

(No. 2408—Decided February 21, 1966.)

Municipal Court of Canton.

*Mr. George H. Trifelos,* prosecuting attorney, for plaintiff.
*Mr. Jack S. Day* and *Mr. Daniel Q. Gennett,* for defendant.

HUNTER, J. This case is brought before the Court on an affidavit which charges the defendant, and we quote:

"Michael Gennett unlawfully did, then and there keep a room or house to be used or occupied for gambling and knowingly permit it to be so used, to-wit; 3037 21st Street, Northwest, Canton, Ohio."

To this affidavit, the defendant has filed a motion to suppress and return the evidence.

The real issue raised by the defendant concerns the legality of the search of his home. He contends that the search was illegal for the reason that the search warrant was invalid because it was issued on an unlawful affidavit, said affidavit failing to contain facts sufficient to show probable cause for the issuance of a search warrant.

Section 2933.22, Revised Code, provides that:

"A warrant of search or seizure shall issue only upon probable cause, supported by oath or affirmation particularly describing the place to be searched and the property and things to be seized."

And the next section, Section 2933.23, Revised Code, says:

"A warrant for search shall not be issued until there is filed with the judge or magistrate an affidavit particularly describing the house or place to be searched, the person to be seized, the things to be searched for and seized, and alleging substantially the offense in relation thereto, and that the complainant believes and has good cause to believe that such things are there concealed, and he shall state the facts upon which such belief is based. The judge or magistrate may demand other and further evidence before issuing such warrant."

The following section, Section 2933.24, is entitled, "What Search Warrants Shall Contain." This section embodies practically the same things as contained in the affidavit.

The main issue before this Court today is the affidavit for the search warrant, and whether or not, from this affidavit, there was probable cause shown.

I think to arrive, or to help the court arrive at the answer, we will have to examine this affidavit and the search warrant.

Since we do not have this affidavit before us, the Court presumes that the allegations set forth in the affidavit are the same as in the warrant, as provided by statute.

As provided by statute both the affidavit and the warrant describe the house to be searched as follows:

"A brick ranch style house with a basement and attached garage located at 3037 21st Street, Northwest, Canton, Ohio." There is no quarrel to be found with the place to be searched.

After listing the inventory, there is an afterthought and they also say:

"Search also a black 1963 Chrysler automobile bearing Ohio license No. M 185 E and his person." (That is, the person of Mike Gennett.)

The person to be seized is: "Mike E. Gennett." There is no quarrel with this.

Next, the things to be searched for and seized:

"Gambling paraphernalia * * *" And these are fully described, as provided by statute.

Next, as the statute provides, he shall also state the facts upon which such beliefs are based.

The rule as laid down in the case of *Jones* v. *United States,* 362 U. S. 257, which seemingly is the anchor case from which the other decisions have found their standing, is strictly followed and adhered to, in *Akron* v. *Williams,* 175 Ohio St. 186, wherein the state of Ohio has spoken, the syllabus reads as follows:

"An affidavit, on which a search warrant is issued, which does not state the facts upon which the affiant bases his belief that the property for which the search is to be made is located at the premises designated in the affidavit, is defective, and the search warrant issued pursuant to such a defective affidavit is invalid and void. Evidence seized under an invalid search warrant is not admissible, and a conviction in a criminal case which is based solely on such evidence is void."

This same case sets forth with particularity the same things that were set forth in the *Jones case.* From page 189 of this opinion in the *Williams case,* we quote:

"Issuance of the search warrant here involved was based solely on an affidavit by a federal narcotics officer reciting that:

(1) he had received information from an unnamed informer that petitioner and another person were involved in illicit narcotics traffic and kept a supply of heroin on hand in the apartment and that the informer had purchased narcotics from them in the apartment * * *''

It seems that the person who prepared the Gennett affidavit tried to follow almost verbatim, or at least the examples that would show probable cause that were laid down in this case; and if we examine the affidavit in comparison of point (1) from which the court has just read, we find that the affidavit in the Gennett case recites that:

''Mike Gennett is the former operator of the business known as Jem's Diner located at 4020 Louisville Road, Northeast, Canton, Ohio, in Plain Township, Stark County, Ohio, and an informant has obtained gambling slips and 'odds slips' from Mike E. Gennett on Thursday, September 24, 1964, at the above address and from an employee of Mike E. Gennett on October 1, 1964, at Jem's Diner, 4020 Louisville Road, Northeast, Canton, Ohio.''

The affidavit in the opinion from the *Jones case* says:

''The informer had purchased narcotics from another person.'' But, the difference is,

''The informer had purchased narcotics from them in the apartment.''

In the Gennett affidavit it says:

''Obtained * * * from Jem's Diner.''

And the second point, they say:

''(2) Information previously received from this informer had been correct.''

And in the Gennett affidavit it says:

''Information received from the same informant in the past has been true.''

And, number (3), the affidavit in the *Jones case* says:

''(3) The same information had been received from other sources.''

And, in our affidavit:

''The same information has been received from other informants that they have been furnished gambling slips and 'odd slips' at the same location.''

And number (4) in the opinion in the *Jones case* recites:

"(4) Petitioner and his associate were known to be drug addicts."

And in the affidavit in our case:

"This location or business place has a reputation as a place where bets may be made and gambling slips or 'odds slips' obtained."

And number (5) from the opinion in the *Jones case*:

"(5) The affiant believed that illicit drugs were being secreted in the apartment by petitioner and another person."

And in our affidavit it says:

"In November of 1963, an employee of Jem's Diner was arrested for and subsequently pled guilty to possession of gambling devices in January of 1964."

So, that is why the court points out that persons drawing the affidavit seemingly tried to follow very closely the rules and things set forth in the *Jones case*.

However, one does not need to make a fine-tooth-comb search or an extended analysis and comparison to discover a flagrant difference. The Jones' affidavit pertains to the apartment where the search was made; and the affidavit before the court pertains to Jem's Diner out on Louisville Road, and not the place searched. Nowhere in the affidavit or in the warrant are there any facts, or even inferences to the house at 3037 21st Street, Northwest. That statute specifically provides that the place to be searched shall be particularly described. Can any other conclusions be reached but that by the provisions of the statute that facts upon which such belief is based must, of a necessity, apply to the same premises to be searched? The court thinks not.

Further, the affidavit before the court is dated October 19, 1965, and the facts upon which the officer's belief is based recites in part, and as the court has just read, one occurrence happened on October 1, 1964, another happened on September 24, 1964, and another happened in November of 1963.

Now, in the case before the court, the acts allegedly took place, one was twenty-five days less than a year before the signing of the affidavit; and another, it was eighteen days less than a year; and in the third, the occurrence was twenty-three months prior to the date of the issuance of this affidavit.

This time element has also been decided by the federal courts, and the court wishes to call attention to the case of *Schoeneman* v. *United States,* reported in 317 F. 2d 173. In this case the search, I believe was one hundred seven days after * * * the affidavit was signed one hundred and seven days after the facts set forth in the affidavit. Reading from the second paragraph of the syllabus, a part thereof, it says:

"Probable cause for issuance of search warrant did not exist, where application for warrant was not made until 107 days after finding the documents which constituted basis for search."

The fourth paragraph of the syllabus states:

"Probable cause to justify issuance of search warrant must be determined as of the time the warrant is issued."

And, from the opinion on page 177 we quote:

"While the statute does not fix the time within which proof of probable cause must be taken by the judge or commissioner, it is manifest that the proof must be of facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time."

Then they quoted from *Sgro* v. *United States,* 287 U. S., at page 210.

And, to the same effect is the case of *Cervantes* v. *United States,* 278 F. at page 350.

The statute of Ohio, Section 2933.24, Revised Code, says that:

"A search warrant shall be returned by the officer holding the same not later than three days after issuance."

If our law makers felt and decreed that the search warrant must be returned within three days, they must have reasoned that the facts from which the probable cause must be found ought to be necessarily concurrent in point of time with the issuance of the warrant.

Applying the law to the facts in this case the court reaches the conclusion that probable cause for the issuance of the warrant to search the residence of the defendant could not be based upon transactions which occurred so far prior to the date that the search warrant was issued.

The court having found the affidavit for the search warrant invalid in two main provisions, which I have just recited, we

must conclude that if the officer believed, and had good cause to believe, supported from facts upon which such belief is based, it will have to be found from the fact that the defendant had purchased a federal gambling stamp. This question has also been decided by the United States Supreme Court in the case of *Kahringer* v. *United States,* 345 U. S., at page 22. And the court would like to quote from page 32 of this opinion:

"Assuming that respondent can raise the self-incrimination issue, that priviledge has relation only to past acts, not to future acts that may or may not be committed. If respondent wishes to take wagers subject to excise taxes under Section 3285, *supra,* he must pay an occupational tax and register. Under the registration provisions of the wagering tax, appellee is not compelled to confess to acts already committed, he is merely informed by the statute, that in order to engage in the business of wagering in the future he must fulfill certain conditions."

The purchase of a gambling stamp is a requirement of a federal law; if one may engage in gambling in the future, he must have this stamp, or be guilty of the violation of the statute. A similar provision is found in federal law providing for certain revenue stamps to engage in selling liquor, whether it is legitimate or illegitimate liquor. One who contemplates shooting ducks, must have a duck stamp. In Ohio one who wishes to fish or hunt, must purchase a license. Now, these laws relate to future activities which may or may not happen. Certainly, the mere possession or purchase of a stamp or license is not illegal in itself, and, therefore, cannot be a basis for probable cause for issuing a search warrant.

Now any time an opinion is rendered by any court, there are certain persons in our society that feel that the courts have gone overboard and released the criminal, and that law enforcement officials ought to turn in their badges and stop work. So, in examining a number of decisions and discussion of these points of law, and especially from a recent decision by his Honor Judge John Rossetti of the Common Pleas Court of Stark County in the *Peters case,* I feel that the court needs must make this recitation of what the law is and how it is to affect you and me:

"The Supreme Court of the United States said in the *El-*

*kins case*, 364 U. S. at 222: 'The criminal goes free, if he must, but it is the law that sets him free. Nothing can destroy a government more quickly than its failure to observe its own laws or worse, its disregard of the character of its own existence.' Justice Brandeis said: 'If the government becomes a lawbreaker, it breeds contempt for law; it invites every man to become a law unto himself; it invites anarchy.' "

Quoting from Judge Rossetti's opinion:

"However guilty and deserving of punishment we may believe a defendant to be, no matter how outraged we may feel that a known law violator is escaping his just desserts through an apparent technicality, yet it is our duty to maintain the fundamental rights of all citizens, be they innocent or guilty. To deviate one iota from this principle, in order to punish one of known guilt, would be to remove the constitutional cloak of protection thrown about the shoulders of all American citizens against unreasonable searches and seizures. The interests of society as a whole must be protected, and it is better to permit one offender to escape punishment than to open the door to abuses against all the people, which could and probably would result were this basic constitutional right abrogated in the slightest degree.

"It is and always has been the general rule that a house cannot be searched without a valid search warrant, legally served.

"The law enforcement officer is faced with a recurring dilemma in conforming to the federal law in search and seizure. He first must decide personally in many cases whether he may properly make a search at all.

"No argument is needed to prove, of course, that the state and city police officers, county sheriffs and others in the front line of law enforcement must become increasingly conscious of the necessity of making lawful arrests, for on the lawfulness of the arrest will hinge the legality of a search and seizure made incidental to arrest. They must become 'search warrant minded,' and bend every effort to obtain a search warrant wherever possible. A legal search warrant, lawfully executed, gives the law enforcement officer his greatest assurance of a search and seizure that are reasonable by federal constitutional standards. It also gives him the greatest protection against

184

any form of adverse action, ranging from court criticism to civil suit by the person aggrieved, as a consequence of an unreasonable search and seizure. In this connection, it is worth noting that the officer alone cannot guarantee the correctness and sufficiency of the warrant; for this result he will need the intelligence and co-operation of those who issue the warrants. They, also, must know the law of searches and seizures and conscientiously follow it.''

For these reasons that the court has just stated, we find that this search was made on an illegal search warrant in that the facts stated thereon were not sufficient to show probable cause.

Since there are other cases pending, I would like to quote for the benefit of counsel for the state and the counsel for the defendant the entire part of paragraph eleven of this syllabus in the *Jones case,* which reads as follows:

''11. Although those wrongfully present upon premises cannot invoke the privacy of the premises by a motion to suppress the use as evidence of property seized in a search of the premises, anyone legitimately on premises where a search occurs may challenge the legality of the search by way of a motion to suppress when the fruits of the search are proposed to be used against him; hence, one charged with violation of federal narcotics statutes does not lack standing to move to suppress the use in evidence against him of narcotics seized in an apartment in which the accused was present with the permission of the person whose apartment it was.''

The motion having been sustained to suppress the evidence, the court sees no reason why the defendant should not be ordered discharged; and the court so orders.

*Motion sustained.*