CITY OF CLEVELAND, APPELLEE, *v.* MART, APPELLANT.

(No. 45655—Decided July 19, 1983.)

*Mr. Jose Feliciano,* city prosecutor, and *Mr. Patrick F. Roche,* for appellee.

Messrs. *Berkman, Gordon, Murray & Palda, Mr. Bernard A. Berkman* and *Mr. J. Michael Murray,* for appellant.

PRYATEL, J. Defendant, Carol Lynn Mart, was arrested and convicted for pandering obscenity in derogation of R.C. 2907.32(A)(4).[1] For the following reasons, we affirm.

Defendant originally entered a plea of not guilty and moved to suppress all evidence seized at the time of her arrest, including testimony from two witnessing policemen. The following evidence was adduced at a hearing on that motion. On August 4, 1981, subject to a plan to "raid" the New Era Theater, Cleveland Police Detectives Thomas Del Regno and Michael Burger entered the theater posing as customers. To gain admittance, the detectives used two twenty dollar bills that had been photocopied at police headquarters. Each received eight dollars change from the theater cashier.

The detectives sat separately among the other twenty-five to thirty patrons in the theater. After watching the show for approximately two hours, they witnessed defendant participating in criminal conduct (cunnilingus) with several patrons.[2]

Del Regno had been equipped with a body microphone which he used to signal other policemen waiting outside the theater. Approximately twelve officers entered the theater, dispersing the patrons and making arrests. The two twenty dollar bills were also recovered from the theater safe, to be used as evidence.

Defendant's motion to suppress was overruled and, at trial, she changed her plea to no contest reserving her right to challenge the court's ruling on that motion. Defendant was found guilty and fined $500 and costs. She now appeals that judgment citing two assignments of error.

### Assignment of Error No. I

"I. The trial court erred in overruling defendant's motion to suppress where the record revealed that the activity by the Cleveland Police Department at the New Era Theater amounted to an unlawful search and seizure which violated defendant's First, Fourth and Fourteenth Amendment rights."

In her first assignment of error, appellant contends that the warrantless "search and seizure" by the Cleveland Police Officers violated her constitutional rights. In support of this argument appellant cites the general proposition that searches conducted outside the judicial process are *per se* unreasonable. *Coolidge* v. *New Hampshire* (1971), 403 U.S. 443. Appellant also relies on *Lo-Ji Sales, Inc.* v. *New York* (1979), 442 U.S. 319, which grants Fourth Amendment protections to commercial businesses which invite the public to enter. Appellant also argues that the officers were not rightfully on the premises as legitimate customers.

In a case similar to that before us, this court held that " * * * [t]he purchase of * * * [an obscene] magazine by a police officer in plain clothes in a shop open to the public does not constitute a search and seizure. * * *" *Cleveland* v. *Holmes* (Feb. 1, 1979), Cuyahoga App. No. 37682, unreported, at page 3. We further held, at page 3 of the opinion, that a "purchase" (here two admissions) was different from a search and seizure in that " * * * '[a] search ordinarily implies a quest by an officer of the law, a prying into hidden places for that which is concealed; and that a seizure connotes a forcible dispos-

---

[1] R.C. 2907.32 reads in part:

"(A) No person, with knowledge of the character of the material or performance involved, shall do any of the following:

"* * *

"(4) Advertise an obscene performance for presentation, or present or participate in presenting an obscene performance, when such performance is presented publicly, or when admission is charged;"

[2] Five patrons were arrested, but are not parties to this appeal.

session of the owner' * * *'' (emphasis deleted), citing *State* v. *Minneker* (1971), 27 Ohio St. 2d 155, 160-161 [56 O.O.2d 97].

Hence, in the instant case, we find no search and seizure. The officers had paid their admission fees and were rightfully on the premises as any other customer when the obscene acts took place. Nor did the retrieval of the two twenty dollar bills convert the status of these officers from customers to trespassers. The retrieval of these marked bills was to preserve evidence that the officers had been admitted as customers and that an admission fee had been charged for purposes of R.C. 2907.32(A)(4).

Accordingly, appellant's first assignment of error is overruled.

### Assignment of Error No. II

"II. The trial court erred in overruling defendant's motion to suppress where the record revealed that the Cleveland Police Department acted as unsupervised censors of presumptively protected activity, violating defendant's First, Fourth and Fourteenth Amendment rights."

Appellant here contends that her conduct is presumptively protected by the First Amendment and that it may not be inhibited without a proper warrant. See *Marcus* v. *Search Warrant* (1961), 367 U.S. 717.

Generally, the cases hold that a warrant must first be obtained before books and movies are seized so as to allow an impartial magistrate to "* * * focus searchingly on the question of obscenity. * * *''

See *Marcus, supra,* at 732; and *Lee Art Theatre, Inc.* v. *Virginia* (1968), 392 U.S. 636. However, the United States Supreme Court has held that "* * * [w]here there are exigent circumstances in which police action literally must be 'now or never' to preserve the evidence of the crime, it is reasonable to permit action without prior judicial evaluation. * * *'' (Footnote omitted.) *Roaden* v. *Kentucky* (1973), 413 U.S. 496, at 505. See, also, *State* v. *Miller* (1977), 53 Ohio App. 2d 199 [7 O.O.3d 274], in which the court upheld the seizure of a film without a warrant where that action was necessary to preserve its existence.

The instant case, involving a live performance, was of such a nature (cunnilingus) and under such exigent circumstances (witnessing the live act) as to justify a prompt and immediate arrest. Although a raid had been planned for this particular night, it could not have taken place unless the defendant committed an obscene act. Furthermore, the officers testified that they were unaware of any particular sequence in which the dancers performed, what specific routine each went through or whether the same performance and acts would take place again. Indeed, the officers had to wait nearly two hours before the obscene act was committed in their presence. This act may well not have occurred again.

In making the determination that an obscene act had been committed, the officers were guided by R.C. 2907.01(F).[3] Witnessing the act of cunnilingus upon appellant by several of the patrons, the of-

---

[3] R.C. 2907.01(F) reads in pertinent part:

"(F) When considered as a whole, and judged with reference to ordinary adults or, if it is designed for sexual deviates or other specially susceptible group, judged with reference to that group, any material or performance is 'obscene' if any of the following apply:
"* * *

"(2) Its dominant tendency is to arouse lust by displaying or depicting sexual activity, masturbation, sexual excitement, or nudity in a way that tends to represent human beings as mere objects of sexual appetite;
"* * *

"(5) It contains a series of displays or descriptions of sexual activity, masturbation, sexual excitement, nudity, bestiality, extreme or bizarre violence, cruelty, or brutality, or human bodily functions of elimination, the cumulative effect of which is a dominant tendency to appeal to prurient or scatological interest, when the appeal to such an interest is

ficers had good cause to believe that an offense (R.C. 2907.32[A][4], pandering obscenity, *supra*) had been committed and thus were authorized to arrest those violating that statute under R.C. 2935.03(A):

"A sheriff, deputy sheriff, marshal, deputy marshal, police officer, or state university law enforcement officer appointed under section 3345.04 of the Revised Code shall arrest and detain until a warrant can be obtained a person found violating, within the limits of the political subdivision, college, or university in which the peace officer is appointed or elected, a law of this state or an ordinance of a municipal corporation."

Hence, the officers, having paid their admission fee and being guided by the statutory definition of "obscene," reasonably took action notwithstanding a lack of prior judicial scrutiny.

Accordingly, appellant's second assignment of error is overruled and the judgment is affirmed.

*Judgment affirmed.*

PATTON, C.J., and NAHRA, J., concur.

---

primarily for its own sake or for commercial exploitation, rather than primarily for a genuine scientific, educational, sociological, moral, or artistic purpose."