The STATE of Ohio, Appellant,

v.

HOLLIS, Appellee.

[Cite as *State v. Hollis* (1994), 98 Ohio App.3d 549.]

Court of Appeals of Ohio,
Lake County.

No. 92–L–145.

Decided Nov. 14, 1994.

Steven C. LaTourette, Lake County Prosecuting Attorney, and Geoffrey W. Weaver, Assistant Prosecuting Attorney, for appellant.

*Albert L. Purola,* for appellee.

FORD, Presiding Judge.

This is an accelerated calendar case. Appellant, the state of Ohio, is appealing the September 9, 1992 judgment entry suppressing all the evidence secured as a result of a search warrant which the trial court found violated the Fourth and Fourteenth Amendments to the United States Constitution, and Section 10, Article I of the Ohio Constitution. This search warrant resulted in the April 21, 1992 indictment of appellee, Gary Hollis, a.k.a. Gary Johnson, on two counts, R.C. 2907.22 (promoting prostitution) and R.C. 2925.11 (possession of cocaine).

Appellee filed a motion to suppress the evidence seized as well as testimony from the officers present at the search. The thrust of the motion to suppress was that the affidavit upon which the search warrant was based was flawed as the affidavit did not state any basis for concluding that there would be a fair probability that contraband or evidence of a crime would be found at that time and place. Furthermore, appellee argued that everything listed in the actual warrant was legal to possess.

The body of the affidavit reads as follows:

"1. That I am a law enforcement officer and a Lieutenant with the Willowick Police Department;

"2. That in the course of my duties with the Willowick Police Department, I have had an opportunity to investigate a complaint involving one GARY HOLLIS aka GARY JOHNSON;

"3. That information was received by the Willowick Police Department that on January 8, 1992, one complainant answered an advertisement in 'Scene' magazine for a massage. She was directed to the Gastown Station at 1100 E. 305th St. and then directed to the Johnson Trailer Park, #39, in Willowick, Ohio. Along with a massage, GARY HOLLIS aka GARY JOHNSON subjected the complainant to: oral sex performed on her; the touching of her vagina with what she believed to be a vibrator; sexual intercourse and fellatio;

"4. That on February 3, 1992, the complainant appeared at the Willowick Police Department to file a complaint against GARY HOLLIS aka GARY JOHNSON. She stated that she had been in contact with a rape crisis center and had been unwilling to report the rape earlier, because she felt guilty about have [*sic*] answered the advertisement;

"5. That GARY HOLLIS aka GARY JOHNSON has been under investigation for sex-related offenses since July 30, 1987. On that date a complaint that GARY HOLLIS aka GARY JOHNSON was running an unlicensed massage parlor from

the trailer at Johnson's Trailer Park was filed with the Willowick Police Department;

"6. That on November 16, 1988, a complaint was filed by one another [sic] complainant in the Willowick Police Department alleging that GARY HOLLIS aka GARY JOHNSON was running a prostitution business and producing obscene videos from his trailer. The complainant witnessed the activity after answering an advertisement in 'Scene' magazine. The complainant also alleged that GARY HOLLIS aka GARY JOHNSON was utilizing adult and juvenile females as well as himself for the production of the videos;

"7. That on April 1, 1992, Special Agent #53 of the Lake County Narcotics Agency and a female confidential informant made a call to GARY HOLLIS aka GARY JOHNSON. As a result of that call, a meeting was arranged;

"8. At the meeting, at the trailer at Lot #39, in Johnson's Trailer Park, Willowick, Ohio, the confidential informant and GARY HOLLIS aka GARY JOHNSON made arrangements for a group sex video to be filmed in the evening on April 8, 1992, at the trailer at Lot #39 in Johnson's Trailer Park, Willowick, Ohio. The confidential informant also purchased an obscene video from GARY HOLLIS aka GARY JOHNSON at that meeting."

A hearing on the motion to suppress was held on June 17, 1992. Appellee filed a supplemental memorandum in support of his motion to suppress on June 22, 1992. The state responded with a memorandum on June 26, 1992. On September 9, 1992, the trial court granted the motion to suppress.

The state timely appealed, alleging one assignment of error:

"The trial court erred by granting appellee's motion to suppress."

■ Crim.R. 12(J) permits a prosecuting attorney to appeal an adverse ruling on a motion to suppress if two basic requirements are met: (1) the prosecuting attorney certifies that the appeal is not taken for the purpose of delay; (2) the granting of the motion renders the state's proof with respect to the pending charge so weak that any reasonable possibility of effective prosecution is destroyed. *State v. Davidson* (1985), 17 Ohio St.3d 132, 135, 17 OBR 277, 279–280, 477 N.E.2d 1141, 1144–1145; *State v. Arnold* (Dec. 11, 1992), Portage App. No. 92–P–0046, unreported, at 2–3, 1992 WL 366894.

R.C. 2945.67 is somewhat more expansive because it refers to "all or any part of * * * a motion to suppress." A similar case, *State v. Hayes* (1986), 25 Ohio St.3d 173, 25 OBR 214, 495 N.E.2d 578, involved a motion to dismiss a one-count indictment on the basis that some of the language was unconstitutionally vague. A majority of the Supreme Court of Ohio held that although only a portion of the indictment was stricken by the trial court, the state could still appeal the court's

ruling pursuant to R.C. 2945.67(A), even though it was arguable (see Justice A.W. Sweeney's dissent at 175, 25 OBR at 216–217, 495 N.E.2d at 580) that enough remained for the prosecution to proceed. *Id.* at 174–175, 25 OBR at 215–217, 495 N.E.2d at 579–580.

In the present case, the state certified in its notice of appeal that the appeal was not taken to delay the matter, and that the ruling rendered the state's proof so weak with respect to the cocaine charge only that any reasonable possibility of effective prosecution had been destroyed. However, pursuant to *Hayes,* the fact that the prostitution charge was not impeded by the granting of the motion does not appear to destroy the state's ability to appeal pursuant to R.C. 2945.67 and Crim.R. 12(J).

Focusing now on the state's argument on the merits, it reasons that although the warrant was issued in response to pandering and prostitution charges, it was a valid warrant so that the subsequent finding of cocaine was not suppressible. Appellee did not raise the issue of whether the seizure of cocaine was impermissibly beyond the scope of the warrant. Accordingly, this issue is not before us for review.

The first issue raised by the state is that the affidavit contains sufficient facts to support a finding of probable cause for the issuance of a warrant. The warrant states that appellee has been under investigation for sex-related offenses for five years, that a confidential informant had recently purchased obscene material from appellee at the location, that an alleged rape occurred there, and that people were to meet on a particular day at the trailer to engage in a group sex video.

The role of the trial court and the appellate court is set forth as follows:

"In reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant issued by a magistrate, neither a trial court nor an appellate court should substitute its judgment for that of the magistrate by conducting a *de novo* determination as to whether the affidavit contains sufficient probable cause upon which the court would issue the search warrant. Rather, the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, trial and appellate courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant." *State v. Cassidy* (Nov. 15, 1991), Lake App. No. 91–L–049, unreported, at 6, 1991 WL 239337, quoting *State v. George* (1989), 45 Ohio St.3d 325, 544 N.E.2d 640, paragraph two of the syllabus.

As to what constitutes probable cause, the United States Supreme Court set forth the totality of the circumstances test for determining probable cause for a search warrant. The Supreme Court of Ohio embraced this test in *George* at paragraph one of the syllabus:

"In determining the sufficiency of probable cause in an affidavit submitted in support of a search warrant, '[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis for knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. (*Illinois v. Gates* [1983], 462 U.S. 213, 238–239, 103 S.Ct. 2317, 2332–2333, 76 L.Ed.2d 527, 548, followed.)" See, also, *Cassidy*, at 3–4, 1991 WL 239337.

It is fundamental that "[an] affidavit must contain something affirmatively indicating that there is probable cause at or about the time the search warrant is applied for." *Coyne v. Watson* (S.D.Ohio 1967), 282 F.Supp. 235, 237.

"[A]n affidavit for a search warrant must present timely information. ' * * * [I]t is manifest that the proof must be of *facts so closely related to the time of the issue of the warrant* as to justify a finding of probable cause at that time. Whether the proof meets this test must be determined by the circumstances of each case.' * * * While there is no arbitrary time limit on how old information can be, the alleged facts must justify the conclusion that the subject contraband is probably on the person or premises to be searched." (Emphasis added.) *State v. Jones* (1991), 72 Ohio App.3d 522, 526, 595 N.E.2d 485, 488. See, also, *State v. Gennett* (1966), 6 Ohio Misc. 176, 35 O.O.2d 368, 217 N.E.2d 275 (acts which took place, twenty-five days less than one year, eighteen days less than one year, and twenty-three months, respectively, prior to the date of the issuance of the affidavit did not provide probable cause to issue warrant).

Regarding the potential illegal activities implied by the affidavit in paragraph six, we observe that the statement made lacked any requisite indicia of probable cause that prostitution was taking place because the allegations of prostitution were nearly three and one half years old (November 16, 1988) and, therefore, stale. Also, there was no implication that the alleged rape incident (paragraphs three and four) was somehow an example of prostitution. Further, that incident happened on January 8, 1992, three months prior to the date upon which the affidavit was sworn (April 8, 1992), it was not reported to the police until two months prior to that time (February 3, 1992), and was not, therefore, close enough to the time of the issue of the warrant. Moreover, it was not clear as to what evidence could be the object of the search referencing this rape allegation.

■ Next, consensual adult group sex (paragraph eight), even if videotaped, was not *per se* illegal, especially when there was no implication of "pay to play." R.C. 2907.22 requires that the sexual activity be in furtherance of the business enterprise of prostitution in order to be considered illegal. See Committee Comment to H.B. No. 511. While such an activity may be obnoxious and repugnant to both this court and to the average Ohio citizen, it does not constitute a crime.

■ The allegation which comes closest to supporting a finding of probable cause is found in the last paragraph of the affidavit, paragraph eight. It concerns the selling of obscene material, per R.C. 2907.32, pandering obscenity.

■ The law prescribes what is "obscene." *Miller v. California* (1973), 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419. Specifically, a work is "obscene" if the average person applying contemporary community standards would find that the work taken as a whole appeals to the prurient interest; the work describes or depicts, in a patently offensive way, sexual conduct specifically defined by state law; and the work, taken as a whole, lacks serious literary, artistic, political, or scientific value. *Id.* at 24–25, 93 S.Ct. at 2614–2615, 37 L.Ed.2d at 430–431; *Urbana ex rel. Newlin v. Downing* (1989), 43 Ohio St.3d 109, 539 N.E.2d 140, paragraph two of the syllabus, following *Miller;* see, also, R.C. 2907.01(F).

■ Conclusory, "bare bones" statements made by the affiant in a search warrant request concerning the nature of the contraband are by themselves insufficient to justify issuance of a search warrant. *Gates,* 462 U.S. at 239, 103 S.Ct. at 2332–2333, 76 L.Ed.2d at 548–549. Specifically, "[s]ufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others." *Id.*

Concordantly, in the case where there is an allegation of pandering of obscene materials, there must be a preliminary judicial determination that the materials to be seized were obscene. *State v. Loshin* (1986), 34 Ohio App.3d 62, 65, 517 N.E.2d 229, 232–233; *Cleveland v. Mart* (1983), 10 Ohio App.3d 210, 212, 10 OBR 284, 285–286, 461 N.E.2d 316, 318–319. An exception arises when law enforcement officers purchase the item in the regular course of business under exigent circumstances, *i.e.,* out of a necessity to preserve the evidence. See *id.* at 213, 10 OBR at 287, 461 N.E.2d at 319. (Officers who paid their admission fee to a theater, posed as customers, and viewed the movie for two hours had probable cause to believe an offense had been committed; live performance was of such a nature and under such exigent circumstances as to justify a prompt arrest.) Also, there has to be some evidence constituting probable cause that commercial exploitation or public dissemination, rather than simple possession or ownership

of obscene materials, was taking place. R.C. 2907.32. Mere possession would not be enough to justify a search warrant, as possession alone has not been determined by the legislature to be a crime.

Two possible ways in which the determination of obscenity could be made would be from viewing a copy of the film or similar film, or from the affiant's statement itself. If a sworn description of the objectionable film or material is sufficiently detailed, the court can rely on that rather than an actual viewing. See, *e.g., Cleveland v. Becvar* (1989), 63 Ohio App.3d 163, 166, 578 N.E.2d 489, 490–491 (officer's affidavit stating that he had viewed two films at a bookstore, and that the films explicitly showed enumerated sex acts, *i.e.,* fellatio, cunnilingus, intercourse, anal intercourse, and ejaculations, recited sufficiently specific facts even though affidavit failed to specify obscenity offense by name or code section).

In *Lo–Ji Sales, Inc. v. New York* (1979), 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920, the United States Supreme Court held that the Fourth Amendment did not permit a search warrant which did not purport to *particularly describe* the items to be seized from an adult bookstore, but instead left it entirely to the discretion of the officials conducting the search to determine which items were obscene. *Id.* at 325, 99 S.Ct. at 2323–2324, 60 L.Ed.2d at 927–928. The affidavit merely asserted that films "similar" to the ones previously purchased could be found on the premises, but at no time were the items listed or described. *Id.* at 321–322, 99 S.Ct. at 2321–2322, 60 L.Ed.2d at 925–926; see, also, *Roaden v. Kentucky* (1973), 413 U.S. 496, 506, 93 S.Ct. 2796, 2801–2802, 37 L.Ed.2d 757, 765–766 (without exigent circumstances, an officer may not make a seizure without a warrant based solely on his own observation that the time was allegedly obscene).

Likewise, in the instant case, neither of the suggested methods—a viewing or detailed description—was accomplished, at least not of record. We find nothing in the officer's affidavit, other than his own uncorroborated statement, to support his conclusory allegation that the purchased video was obscene. There was nothing of record to show that any judicial determination of obscenity, visual or otherwise, was made prior to the issuance of the warrant. Therefore, as in *Lo–Ji Sales, Inc.,* it appears that the determination of obscenity was left entirely up to the officials conducting the search. Clearly, this is not consistent with the mandate of the foregoing case law. Thus, the fact that a sale of "obscene" material was alleged does not provide the requisite probable cause for the issuance of a warrant. It was not properly established that the materials were probably obscene under the law.

■ Next, the state argues that the evidence should not be suppressed because the evidence obtained by the officers was seized in good faith reliance on a search warrant issued by a detached and neutral magistrate. See *George,* 45 Ohio St.3d

325, 544 N.E.2d 640, at paragraph three of the syllabus. The "good faith" exception to the exclusionary rule was first recognized in *United States v. Leon* (1984), 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677, which held that "the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion. We do not suggest, however, that exclusion is always inappropriate in cases where an officer has obtained a warrant and abided by its terms." *Id.* at 922, 104 S.Ct. at 3420, 82 L.Ed.2d at 698.

Although appellee claims that the state never raised this argument either in its response to the suppression motion or at the hearing itself, that is simply incorrect. At the end of Section III, paragraph A of the state's response to defendant's motion to suppress evidence, the appellant states:

"*United States v. Leon* (1984), 468 U.S. 897 [104 S.Ct. 3405, 82 L.Ed.2d 677], states that 'suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule.' *Id.* at 917 [104 S.Ct. at 3417–3418, 82 L.Ed.2d at 695]. *Leon* stands for the proposition that the Fourth Amendment exclusionary rule does not bar the use in a prosecution's case-in-chief of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause. There is also no argument by the defense attorney that the officers unreasonably relied on the warrant[;] therefore, *Leon* dictates that the exclusionary rule does not apply to the case at hand, therefore, suppression will not further the purposes of the exclusionary rule as dictated by *Leon* * * *."

The *Leon* court notes several types of behavior which would go beyond "reasonable reliance": an awareness on the part of the affiant/police officer that the affidavit upon which the magistrate relies is false or misleading, where the issuing magistrate wholly abandoned his judicial role, where an officer relies on a warrant based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable, and where the warrant is so facially deficient, *i.e.*, in failing to particularize the place to be searched or the things to be seized, that the executing officers cannot reasonably presume it to be valid. *Id.* at 923, 104 S.Ct. at 3420–3421, 82 L.Ed.2d at 698–699; *George,* 45 Ohio St.3d at 331, 544 N.E.2d at 646–647. In the instant case, the affidavit recited a series of stale, conclusory allegations of various illicit activities, some of which were not even illegal. Although each of the aforementioned deficiencies, when viewed alone, would not necessarily render the affidavit so facially deficient as to destroy any good faith reliance, we take the position that the affidavit, *when*

*viewed as a whole* in light of its collective shortcomings, is so fatally devoid of facts which would give a reasonable officer cause to presume its validity that we cannot apply the good faith exception. See *Jones,* 72 Ohio App.3d at 526, 528, 595 N.E.2d at 487–488, 489 (allegations in the affidavit were stale when they spanned time period of three months; also failed to establish a pattern of conduct or indicate an ongoing investigation; court held affidavit so totally void of facts tying the defendant to the alleged activity that the good faith exception was not applicable); see, also, *State v. Rodriguez* (1989), 64 Ohio App.3d 183, 193–194, 580 N.E.2d 1127, 1134–1135 (warrant was issued without any corroboration whatsoever of the conclusory statement of the informant; no further investigation was conducted by police; good faith exception did not apply).

Accordingly, based on the foregoing, because this case perhaps presented an instance of legal immorality, rather than illegal debauchery, we agree with the trial court that there was less than probable cause for issuing a warrant. Furthermore, we feel that the failures which resulted in a lack of probable cause were so grossly and facially deficient that it should have been obvious to the official conducting the search, thus rendering any reliance on the affidavit unreasonable.

The appellant's sole assignment is without merit.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

JOSEPH E. MAHONEY, J., concurs.

CHRISTLEY, J., dissents.

CHRISTLEY, Judge, dissenting.

I respectfully dissent from the majority opinion only in respect to the final issue of whether the obtaining of evidence by the officers was done in good faith reliance on a search warrant issued by a detached and neutral magistrate per *George* and *Leon.*

The United States Supreme Court has considered the issue of whether the exclusionary rule should be applied so as to bar the use, in the prosecution's case-in-chief, of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate, *but ultimately found to be invalid. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677.

*Leon* points out very specifically that *the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates.* Further, suppression of evidence obtained pursuant to warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion

will further the purposes of the exclusionary rule. *Id.* at 916, 104 S.Ct. at 3417, 82 L.Ed.2d at 694.

The *Leon* court notes several types of behavior which would go beyond the "reasonable reliance" test of *Leon:* an awareness on the part of the affiant/police officer that the affidavit upon which the magistrate relies is false or misleading, where the issuing magistrate wholly abandoned his judicial role, where an officer relies on a warrant based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable, and where the warrant is so facially deficient, *i.e.*, in failing to particularize the place to be searched or the things to be seized, that the executing officers cannot reasonably presume it to be valid. *Id.* at 923, 104 S.Ct. at 3420–3421, 82 L.Ed.2d at 698–699. The Supreme Court of Ohio in *George* interpreted *Leon's* directives as to what searches would be exempted on the basis of the "good faith" exception. In *George,* a search warrant was issued for the house, grounds, and outbuildings as a result of an affidavit that only described the observation of a single marijuana plant growing in the garden of the residence.

The court concluded that even if the warrant was found to be lacking in probable cause as to the search of the house and outbuildings, as opposed to the grounds alone, there was still a basis to uphold the search based on the "good faith" exception set out in *Leon.*

In the instant case, the affidavit recited a longstanding history of allegations of illicit sexual activities at the appellee's residence, a five-year ongoing investigation, and referred to a very recent sale of material which the police officer clearly felt was "obscene" at the same residence. There was no allegation or indication that the issuing judge's actions represented anything other than a mistake in judgment. If that judge did not recognize the "staleness" or the necessity for a judicial determination of "obscenity," then I do not find it surprising that the officers acting on the warrant did not have a greater degree of legal perspicuity than the judge.

There was no police illegality, and no clear abandonment by the judge of his judicial role. The affidavit was not so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable, and it was not so facially deficient that the executing officers cannot reasonably presume it to be valid. *Leon; George.*

It is irrelevant that the affidavit did not contain a statement of probable cause for the charges which ultimately resulted: promoting prostitution and possession of cocaine. As to this point, I would note that there was no challenge to the scope of the warrant.

This is a classic example of an instance where the whole is less than the sum of its parts. Despite the initial impression of gross wrongdoing, I agree with the majority that this was an instance of immorality rather than illegality. Therefore, there was less than probable cause for issuing a warrant, even in reference to the sale of obscene materials. *George.*

However, I part company with the majority for its reluctance to recognize the "good faith" exception. The warrant was not so grossly or facially deficient such that it should have been obvious to the officers that they could not reasonably rely on it. As the issue of a "good faith exception" was raised in the trial court, I feel that the standards set out in *Leon* and *George* require that the results of the search be upheld and the motion to suppress be overruled.

I would, therefore, find the state's sole assignment to be with merit.