The STATE of Ohio, Appellant,

v.

McNAMEE, Appellee.

[Cite as *State v. McNamee* (2000), 139 Ohio App.3d 875.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 00AP–302.

Decided Nov. 9, 2000.

*Ron O'Brien,* Franklin County Prosecuting Attorney, and *Joyce S. Anderson,* Assistant Prosecuting Attorney, for appellant.

*R. William Meeks* and *Samuel H. Shamansky,* for appellee.

KENNEDY, Judge.

Plaintiff-appellant, the state of Ohio, appeals from a judgment of the Franklin County Court of Common Pleas granting a motion to suppress evidence seized pursuant to a search warrant.

On June 10, 1999, a Franklin County Municipal Court judge issued a search warrant for the residence of defendant-appellee, Martin McNamee, at 2517 Hyacinth Lane, Columbus, Ohio. The warrant was based upon an affidavit submitted by Detective Jan Roberts of the Columbus Police Division. Later the same day, police officers executed the search warrant and seized methylenedeoxy methamphetamine ("Ecstasy") from appellee's residence.

On October 19, 1999, the Franklin County Grand Jury indicted appellee with one count of aggravated possession of drugs, in violation of R.C. 2925.11. Appellee subsequently filed a motion to suppress evidence, arguing that the search warrant was issued in violation of the Fourth Amendment to the United States Constitution and comparable provisions of the Ohio Constitution. The trial court conducted a hearing on appellee's motion and subsequently concluded that the affidavit submitted to procure the warrant did not establish probable cause. The trial court further held that the evidence resulting from the warrant was not obtained under the good faith exception outlined in *United States v. Leon* (1984), 468 U.S. 897, 923, 104 S.Ct. 3405, 3420–3421, 82 L.Ed.2d 677, 698–699. Thus, the trial court sustained the motion and suppressed all evidence seized as a result of the warrant. On March 9, 2000, the trial court filed a journal entry reflecting its decision.

Appellant appeals, raising one assignment of error:

"The court erred in granting the defendant's motion to suppress evidence seized pursuant to a search warrant."

In its single assignment of error, appellant first asserts that the trial court erred in concluding that the warrant was not based on probable cause. We disagree.

The Fourth Amendment to the United States Constitution requires warrants to be issued on a showing of probable cause. When determining the sufficiency of probable cause in an affidavit submitted in support of a search warrant, a judge or magistrate must make a "practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates* (1983), 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527, 548. When reviewing a search warrant, trial and appellate courts are to determine whether the judge or magistrate had a substantial basis for concluding that probable cause existed for the warrant to be properly issued. *Id.* In reviewing the warrant and its supporting affidavit, trial and appellate courts should accord great deference to the judge's or magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant. *State v. George* (1989), 45 Ohio St.3d 325, 544 N.E.2d 640, paragraph two of the syllabus, citing *Illinois.*

Here, Detective Jan Roberts requested a search warrant for appellee's home to obtain evidence of sexual battery and to obtain the drugs Ecstasy and Rohypnol. The affidavit submitted to procure the warrant provided:

"On 6/8/99, at approximately 9:30 p.m., **PAMELA OGLE** and **JENNIFER WISEMAN** went out with some co-workers to Shooter Café to celebrate the opening of Cahoots. While at Shooter Café, the group met up with [appellee], the owner of Shooter's. He told them about a party at his place. They went to the location later identified as 2517 Hyacinth.

"Ms. Ogle stated she was under the influence of alcohol and Ecstasy, which she consumed at Shooter. Ms. Ogle said for this reason she ended up downstairs in the basement. Ms. Ogle doesn't believe anyone messed with her.

"Around 8:30 a.m. on the morning of the 9th of June, Pamela Ogle awoke in the basement. Ms. Ogle walked upstairs and into the living room and found her friend, Jennifer Wiseman, lying face-down on the living room floor with her skirt up around her waist and naked from the waist down. Ms. Ogle tried to awaken her friend; however, she was unsuccessful.

"When Ms. Ogle was unable to awaken her friend, [appellee] picked up Jennifer and carried her out to Ms. Ogle's vehicle.

"Jennifer Wiseman was transported to Riverside emergency room, where she was treated. Jennifer was also examined for sexual assault. Evidence was found which indicated sex had occurred.

"In addition, it is believed Jennifer ingested Ecstasy and Rohypnol. Ms. Ogle admitted on one occasion to consuming Ecstasy with [appellee] at the Shooter Café. Ms. Ogle also indicated that on the same day [appellee] attempted to give her a drink laced with Rohypnol. Ms. Ogle saw [appellee] drop something into her drink, so she refused the drink.

"The affiant believes the evidence requested is still inside 2517 Hyacinth. Ms. Ogle was confident it was [appellee's] residence because Ms. Ogle had been there the evening of the assault, and on another occasion. Ms. Ogle was asked how sure she was that the residence was [appellee's], and she indicated she was 100 percent sure.

"Jennifer Wiseman was not interviewed concerning this particular incident because of her medical condition.

"In addition, on the morning of June 10, 1999, around 7:20 A.M., Detective D. Gaver of the Columbus Police Intelligence Bureau, returned my page from the previous day. Detective D. Gaver advised [appellee's] actual address is 2517 Hyacinth. The information on the address was received as a result of a six month investigation with the multi-agency investigation involving the F.B.I., B.C.I., Franklin County Sheriff's Office, and Columbus Police Intelligence Office.

"Detective D. Gaver was personally involved in the investigation, which included surveillance of the address at 2517 Hyacinth.

"It should be noted that 2517 Hyacinth is in the same complex as 2527 Dahlia Way. It is one street north of the aforementioned address on the same side of the street as the address on Dahlia.

"In lieu of returning said property with search warrant, the affiant requests authorization to retain such evidence at the Police Property Room located at 1250 Fairwood Avenue. [Search Warrant Affidavit.]"

■ We conclude that the affidavit contains no direct information establishing probable cause that illicit drugs would have been found in appellee's home when searched. The affidavit provides no information on appellee either using or possessing illicit drugs while the women were in contact with him in June 1999, and neither Wiseman nor Ogle suggest that illicit drugs were present at appellee's home on the night of June 8, 1999.

■ Moreover, we conclude that the affidavit does not provide a reasonable inference that illicit drugs would have been found in appellee's home when searched. The affidavit states: "Ms. Ogle admitted on one occasion to consuming

Ecstasy with [appellee] at the Shooter Café. Ms. Ogle also indicated that on the same day [appellee] attempted to give her a drink laced with Rohypnol." However, the information provided by Ogle is vague as to when these prior incidents occurred and does not allow for an inference that illicit drugs would be present in appellee's home if searched. An affidavit for a search warrant must present timely information. *State v. Jones* (1991), 72 Ohio App.3d 522, 526, 595 N.E.2d 485, 488.

Similarly, the affidavit provides no information on whether a temporal relationship existed between these prior incidents and the date that appellee met Ogle and Wiseman on June 8, and June 9, 1999. Without a demonstration of a temporal relationship, we may not infer from the mere fact that appellee was in possession of illicit drugs in the past, that illicit drugs would be present in appellee's home when searched. See, *e.g., State v. Swearingen* (1999), 131 Ohio App.3d 124, 130, 721 N.E.2d 1097, 1101–1102 (concluding that the mere allegation of past drug use is not enough to satisfy the requirements of probable cause to allow for the issuance of a search warrant for a person's blood or urine at any time after such an allegation is made).

█ It is also improper to infer that illicit drugs would be present at appellee's home when searched solely because Wiseman displayed signs of being overdosed on drugs while at the home. To conclude otherwise would establish probable cause on the basis of conjecture and speculation. As noted above, probable cause exists only when there is a "fair probability" that contraband or evidence of a crime will be found in a particular place. *Gates* at 238, 103 S.Ct. at 2332, 76 L.Ed.2d at 548.

█ As well, we note that the affidavit does contain information that would allow for an inference that Wiseman was engaged in sexual activity while at appellee's home. For example, Wiseman was found lying face down on the living room floor with her skirt up around her waist and naked from the waist down. The affidavit states that Riverside Hospital found evidence "which indicated sex had occurred." However, the affidavit contains no information connecting the sexual activity with a sexual assault and does not allow for a valid inference that Wiseman was the victim of a sexual assault. It is also improper to infer that Wiseman was the victim of a sexual assault while at appellee's home solely because Wiseman displayed signs of being overdosed on drugs while at the home. As indicated above, to conclude otherwise would establish probable cause on the basis of conjecture and speculation, and not a "fair probability" that evidence of a crime would be found in a particular place as required in *Gates*. *Id.* at 238, 103 S.Ct. at 2332, 76 L.Ed.2d at 548. Thus, we conclude that the affidavit does not establish probable cause that evidence of sexual assault would be found in appellee's home when searched.

■ As such, based on the above, we conclude that the warrant is not based on probable cause and is invalid. Appellant asserts that, even if the warrant lacks probable cause, the trial court should have held the evidence admissible under the good-faith exception. We disagree.

■■ Under the good-faith exception, the Fourth Amendment exclusionary rule should not be applied to suppress evidence obtained by officers acting in objectively reasonable reliance on a search warrant issued by a detached and neutral magistrate or judge, but ultimately found to be unsupported by probable cause. *Leon* at 922–923, 104 S.Ct. at 3420–3421, 82 L.Ed.2d at 698–699; *George,* at paragraph three of the syllabus. Officers may not avail themselves of the good-faith exception where the affidavit supporting the warrant was so lacking in indicia of probable cause as to render official belief in its validity entirely unreasonable. *Leon* at 923, 104 S.Ct. at 3420–3421, 82 L.Ed.2d at 698–699.

In *State v. Hollis* (1994), 98 Ohio App.3d 549, 649 N.E.2d 11, the Lake County Court of Appeals examined the good-faith exception. In *Hollis,* police officers sought a warrant to search the defendant's trailer for "sex-related" offenses. *Id.* at 551–552, 649 N.E.2d at 12–13. The affidavit submitted by police officers in support of the search warrant stated that the defendant had been under investigation for "sex-related" offenses for five years, that an alleged rape occurred at the defendant's trailer, that people were to meet at the defendant's trailer on a particular day to engage in a group sex video, and that the defendant sold obscene materials. *Id.* The appellate court concluded that the affidavit did not establish probable cause because it provided stale and conclusory information to allege illegal activity and, in some instances, the affidavit was unclear on what evidence could be the object of the search. *Id.* at 554–556, 649 N.E.2d at 14–16. The court also noted that some of the alleged conduct described in the affidavit did not amount to illegal activity, in particular the making of a group sex video. *Id.* at 555, 649 N.E.2d at 14–15. As noted above, the appellate court further concluded that the search was not valid under the good-faith exception. *Id.* at 557–558, 649 N.E.2d at 16–17. According to the appellate court, the affidavit merely recited a series of stale, conclusory allegations of various illicit activities, some of which were not even illegal and, thus, was so "fatally devoid of facts which would give a reasonable officer cause to presume its validity that we cannot apply the good faith exception." *Id.*

In *State v. Jones* (1991), 72 Ohio App.3d 522, 595 N.E.2d 485, the Erie County Court of Appeals applied a similar rationale to conclude that the good-faith exception did not apply to validate a search conducted under the authority of a search warrant that was ultimately deemed invalid. In *Jones,* police officers sought a warrant to search Diane Jones in her residence for illicit drugs and evidence of drug-related activity. *Id.* at 525–526, 595 N.E.2d at 487–488. The

affidavit used to procure the warrant described observations of a person convicted of drug use visiting Diane Jones's residence at 904 Perry Street. *Id.* at 525, 595 N.E.2d at 487. An informant told the officers that the individual was transporting cocaine back and forth from the residence. *Id.* The affidavit also indicated that Diane Jones owned a "pinkish" automobile and that a "pinkish" automobile was observed coming from Perry Street and ending up at a street corner where a drug deal was taking place. *Id.* at 525–526, 595 N.E.2d at 487– 488. According to the affidavit, these events took place approximately three months before the warrant was obtained. *Id.* As well, the affidavit noted that a police officer received information that Diane Jones was dealing cocaine from her home at 904 Perry Street. *Id.* at 526, 595 N.E.2d at 487–488. The appellate court concluded that the search warrant was invalid because the affidavit used to procure the warrant did not establish probable cause. *Id.* at 527, 595 N.E.2d at 488–489. The court reasoned that the affidavit contained stale information and failed to establish a pattern of conduct linking Diane Jones to illicit drug activity. *Id.* at 526, 595 N.E.2d at 487–488. The court further stated that the specific allegation of Diane Jones dealing cocaine from her home did not establish probable cause because the allegation did not specify when the defendant was dealing drugs. *Id.* As well, the court concluded that the affidavit did not establish probable cause because it contained no statement indicating that cocaine was likely to be found in her home if searched. *Id.* at 527, 595 N.E.2d at 488– 489. The court further concluded that the officers could not avail themselves of the good-faith exception. *Id.* at 528, 595 N.E.2d at 489. According to the court, "the affidavit presented to the judge was totally void of *facts* which would tie [the defendant] to the alleged drug activity. As such, it was so lacking in indicia of probable cause that the officer's reliance on the warrant was not reasonable." (Emphasis added.) *Id.*

We agree with the rationales in *Hollis* and *Jones* that the good-faith exception will not justify a search where the affidavit procuring a search warrant fails to provide facts that reasonably connect the place to be searched with the alleged illegal activity or allow for a reasonable conclusion that the place to be searched would contain the evidence sought.

In this case, as noted above, the affidavit used to procure the search warrant is void of facts that reasonably connect appellee's residence to the alleged sexual assault and to the use of Ecstasy and Rohypnol. As well, the affidavit fails to allow for a reasonable inference that evidence of a sexual assault and the drugs Ecstasy and Rohypnol would be present at appellee's residence during the search. Accordingly, we conclude that the affidavit supporting the warrant was so lacking in indicia of probable cause as to render official belief in its validity entirely unreasonable.

Therefore, appellant's assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

PEGGY BRYANT and TYACK, JJ., concur.