The STATE of Ohio, Appellant,

v.

SWEARINGEN, Appellee.

[Cite as *State v. Swearingen* (1999), 131 Ohio App.3d 124.]

Court of Appeals of Ohio,
Third District, Marion County.

No. 9–97–58.

Decided Feb. 8, 1999.

*Jim Slagle,* Marion County Prosecuting Attorney, for appellant.

*Todd Anderson,* for appellee.

EVANS, Judge.

This appeal is brought by the state of Ohio from a judgment of the Court of Common Pleas of Marion County granting a motion to suppress evidence in a case involving William F. Swearingen, Jr. Although this appeal was originally placed on the accelerated calendar, we elect to issue the following opinion pursuant to Loc. R. 12(5).

On April 23, 1997, William Swearingen, Jr., was indicted on two counts of trafficking in cocaine, in violation of R.C. 2925.03(A)/(C)(4)(b), and one count of possession of cocaine, in violation of R.C. 2925.11(A)/(C)(4). The possession charge stemmed from a drug test performed on Swearingen's urine. The urine sample, which tested positive for cocaine, was obtained by police pursuant to a search warrant executed on March 28, 1997. On July 3, 1997, Swearingen filed a motion to suppress the evidence obtained by the state as a result of the search. A hearing on the motion was held on July 31, 1997. The following week, the trial court sustained the motion to suppress, finding no probable cause to justify the issuance of a warrant to search Swearingen's body.

Pursuant to Crim.R. 12(J), the state now appeals this decision and certifies that the instant appeal is not taken for delay purposes and that trial court decision has rendered the state's evidence on the charge of possession of cocaine so weak in its entirety that it had destroyed any reasonable possibility of effective prosecution.[1] The state has assigned two errors on appeal.

### Assignment of Error No. 1

"The trial court erred in determining that a search warrant was invalid where the issuing magistrate had a substantial basis for concluding that probable cause existed."

In its first assignment of error, the state argues that the magistrate had a substantial basis for finding probable cause to justify a search of Swearingen's body. In support of this argument, the state cites the information provided to the magistrate by Detective Steven Ross.

The record reveals that Detective Ross filed an affidavit in the Municipal Court of Marion, Ohio on March 28, 1997, requesting a warrant to search Swearingen's body based on his belief that the search would produce "evidence of the commission of a criminal offense."[2] Detective Ross testified before the magistrate that he had information from an informant who participated with law enforcement in two controlled drug buys involving Swearingen on February 20, 1997. These buys led to Swearingen's arrest on March 27, 1997 on felony drug trafficking charges. According to Detective Ross, as of February 20, 1997, this informant told him that she had repeatedly smoked crack cocaine with Swearingen and that Swearingen freely gave the drug away to his female friends. Furthermore, the detective testified that following the arrest on March 27, he had

---

1. Therefore, this appeal is relevant only to the R.C. 2925.11(A)/(C)(4) charge of possession. Prosecution on the trafficking charges has proceeded.

2. Detective Ross later stated in his testimony to the magistrate that he sought the warrant in connection with "felony drug abuse" charges.

asked Swearingen for a urine sample, to which Swearingen replied, "Why would I want to give you a urine sample just to have another charge put against me?" Detective Ross understood this to mean that Swearingen would test positive for drugs. Given this testimony in support of probable cause, the magistrate issued a warrant on March 28, 1997 to search Swearingen's body.

The trial court reviewed the testimony above and concluded that the magistrate acted without a substantial basis that probable cause existed when issuing the warrant. Specifically, the trial court found Detective Ross's affidavit vague, since it failed to describe what the detective expected to find in the search. The court also noted the absence of any testimony regarding the reliability and credibility of the informant whose hearsay statements were used in support of probable cause. Furthermore, while the informant purportedly had personal knowledge of Swearingen's drug use, no date or time was mentioned to establish when the informant and Swearingen last used drugs together. At the latest, the trial court found Detective Ross obtained the information on February 20, 1997, over a month prior to the time the request for the warrant was made and weeks after any evidence of cocaine could have been detected in a urine specimen. Finally, the trial court refused to infer any degree of culpability from Swearingen's refusal to consent to give a urine sample.

The determination of whether probable cause existed in this case is not subject to *de novo* review by this court. *State v. George* (1989), 45 Ohio St.3d 325, 544 N.E.2d 640, paragraph two of the syllabus. Rather, like the trial court, our duty as an appellate court "is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Id.* Moreover, we are to give great deference to the magistrate's determination that probable cause existed, resolving marginal cases in favor of upholding the warrant. *Id.*

In determining the sufficiency of probable cause present in an affidavit and testimony offered in support of a search warrant, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.*, at paragraph one of the syllabus, quoting *Illinois v. Gates* (1983), 462 U.S. 213, 238–239, 103 S.Ct. 2317, 2332–2333, 76 L.Ed.2d 527, 548–549.

While the magistrate is to consider the totality of the circumstances presented in each case, factors such as the "veracity" of the hearsay source and their "basis of knowledge" remain relevant elements to consider within the totality-of-the-circumstances test. See *Gates,* 462 U.S. at 240, 103 S.Ct. at 2333, 76 L.Ed.2d at

549–550. Moreover, Crim.R. 41(C) expressly directs a magistrate to consider these factors:

"The finding of probable cause may be based upon hearsay in whole or in part, provided there is a substantial basis for believing the source of the hearsay to be credible and for believing that there is a factual basis for the information furnished."

In this case, the affidavit and oral testimony of Detective Ross offer no statement or representation that the hearsay informant was a credible person or that her allegations were worthy of belief. The fact that the informant worked in conjunction with law enforcement on controlled drug buys does not speak to the issue of the informant's reputation for trustworthiness or truthfulness. Detective Ross admitted at the suppression hearing that the first time he had any dealings with this particular informant was during the controlled drug buys involving Swearingen. He clearly had no history or prior experience with the informant from which he could have attested to her reputation for trustworthiness or truthfulness. Thus, the element of "veracity" is entirely absent.

Nor did Detective Ross use independent police work to substantiate or corroborate the informant's assertions.[3] Rather, he simply recited the informant's conclusory statement that she had repeatedly smoked crack with Swearingen. The dissent finds some corroboration in the fact that the defendant was clearly heard on the tape recording of the controlled drug buys and was thus "identified independently by law officers as the individual from whom the informant was actually purchasing the drugs." Police identification of the appellee provides nothing from which one might conclude that the informant is either honest or reliable. The record does not establish that the informant ever

---

3. Corroboration by independent police investigation can fill the probable cause gap left by unverified hearsay informants. In *Illinois v. Gates,* police received an anonymous letter foretelling a drug run from Illinois to Florida and back involving Mr. and Mrs. Gates. Police follow-up on the tip provided the needed substantiation of the unverified statements of the anonymous informant to meet the probable cause test. The court in *Gates* noted that the letter, standing alone, would not support a finding of probable cause to believe drugs would be in the Gateses' car:

"The letter provides virtually nothing from which one might conclude that the author is either honest or his information reliable. * * * Something more was required, then, before a magistrate could conclude that there was probable cause to believe that contraband would be found in the Gateses' home and car." *Gates,* 462 U.S. at 227, 103 S.Ct. at 2326, 76 L.Ed.2d at 541.

The "something more" was the corroboration of the letter by independent police work. Police surveillance confirmed the predicted movements of Mr. and Mrs. Gates described in the letter. This corroboration raised the anonymous tip from unsupported hearsay to the level of probable fact and provided a "substantial basis" for crediting its truth.

The hearsay statements of the informant in this case were never corroborated through police investigation.

supplied information to police as to the identity of the seller of the drugs. Thus, police identification of the appellee on the tape cannot be corroboration of her information. Moreover, we are not convinced that the informant's statement of Swearingen's drug use is in any way corroborated by Swearingen's stated reluctance to voluntarily give a urine sample for fear of another criminal charge being placed against him. Such a statement is subject to numerous interpretations, only one of them being that appellant would test positive for drugs. Consequently, like the trial court, we are not inclined to draw any inferences from the remark.

 Even assuming, *arguendo*, that the informant's allegations were credible, the absence of any chronology regarding the events alleged renders the statements so vague that no reasonable inferences could be drawn from them. While a magistrate may draw reasonable, commonsense inferences from allegations within the affidavit and oral testimony, the inferences must be drawn from facts set forth in them. *State v. Bean* (1983), 13 Ohio App.3d 69, 72–73, 13 OBR 83, 86–88, 468 N.E.2d 146, 150–152. The facts in this case merely establish that on February 20, 1997, Detective Ross learned that his informant was claiming she had repeatedly used drugs with Swearingen. When this happened, no one knows. Moreover, Detective Ross offered no evidence that any drug taken before February 20, 1997 could be found in Swearingen's urine on March 28, 1997. Since it is a matter of common knowledge that drugs dissipate over time in a person's body, staleness was an issue which should have concerned the magistrate.

 " '[I]t is manifest that the proof [necessary for a search warrant] be of facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time. * * *' *Sgro v. United States* (1932), 287 U.S. 206, 210, 53 S.Ct. 138, 140, 77 L.Ed. 260, 263.

 "While there is no arbitrary time limit on how old information can be, the alleged facts must justify the conclusion that the subject contraband is probably on the person or premise to be searched. *State v. Yanowitz* (1980), 67 Ohio App.2d 141, 147, 21 O.O.3d 445, 449, 426 N.E.2d 190, 195." *State v. Jones* (1991), 72 Ohio App.3d 522, 526, 595 N.E.2d 485, 488.

Furthermore, the double inference cannot be drawn that (1) someone who has repeatedly used drugs (an unknown number of times) *sometime* in the past is addicted to drugs, and (2) someone addicted to drugs will currently be using drugs. If this inference upon an inference were permitted, the mere allegation of past drug use would be enough to forevermore satisfy the requirements of probable cause and allow for the issuance of a search warrant for a person's blood or urine *at any time* after such an allegation is made. Clearly, this would be ludicrous. Consequently, we find that without further information being present-

ed by the detective, the magistrate could not have had a substantial basis to conclude that there existed a "fair probability" that evidence of a crime would be found in appellee's body. Appellant's first assignment of error is overruled.

## Assignment of Error No. 2

"The trial court erred in suppressing evidence obtained by the officers who were acting in objectively reasonable reliance of a search warrant [issued] by a detached and neutral magistrate."

While the exclusion of evidence is generally the remedy awarded in response to Fourth Amendment violations, this rule is not without exceptions. In *George, supra,* 45 Ohio St.3d 325, 544 N.E.2d 640, the Ohio Supreme Court adopted the good-faith exception to the Fourth Amendment exclusionary rule enunciated in *United States v. Leon* (1984), 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677, and held:

"The Fourth Amendment exclusionary rule should not be applied so as to bar the use in the prosecution's case in chief of evidence obtained by officers acting in objectively reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause." *George,* at paragraph three of the syllabus; see *State v. Wilmoth* (1986), 22 Ohio St.3d 251, 22 OBR 427, 490 N.E.2d 1236, paragraph one of the syllabus.

■ In its second assignment of error, the state contends that even if the search warrant was improperly granted, the evidence should not have been excluded because Detective Ross acted in good-faith reliance when executing the warrant.

■ It is not enough to invoke the good faith exception that an officer was acting pursuant to a warrant issued by a magistrate. The action taken by the officer must be based on the belief that the warrant was properly issued and this reliance must be objectively reasonable. *George, supra.* The United States Supreme Court in *Leon* noted several types of behavior which would not constitute "reasonable reliance": where the affiant/police officer has an awareness that the affidavit upon which the magistrate relies is false or misleading, where the issuing magistrate wholly abandoned his judicial role, where an officer relies on a warrant based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable, and where the warrant is so facially deficient, *i.e.,* in failing to particularize the place to be searched or the things to be seized, that the executing officers could not reasonably presume it to be valid. *Leon,* 468 U.S. at 923, 104 S.Ct. at 3420–3421, 82 L.Ed.2d at 698–699; *George,* 45 Ohio St.3d at 331, 544 N.E.2d at at 646–647.

In this case, the question becomes whether the facts and circumstances of this case warrant the application of the *Leon* good-faith exception or whether the officer should have known that the warrant was based on information so lacking in indicia of probable cause that reliance on its validity would be unreasonable. The inquiry must look behind the warrant to determine "whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon*, 468 U.S. at 922, 104 S.Ct. at 3420, 82 L.Ed.2d at 698, fn. 23.

We do not believe a reasonably well-trained officer would have relied on the warrant in this case, because the affidavit and oral testimony used to procure the warrant were so lacking in indicia of probable cause that it rendered official belief in its existence entirely unreasonable. As a threshold matter, we find it particularly important to note that the officer applying for the search warrant and the officer executing the warrant were the same in this case—Detective Ross. Thus, he had intimate knowledge of the facts supporting the warrant request as well as the deficiency of probable cause. As we previously discussed, Detective Ross never presented the reviewing magistrate with any indicia of probable cause other than hearsay statements of an untested informant. The veracity of this hearsay informant was not attested to by Detective Ross, nor does the record indicate that he corroborated or verified any of the informant's allegations by independent police work. More important, the allegations reported by this informant were divulged at least one month prior to the time Detective Ross applied for a search warrant. As a result, even if the allegations that Swearingen used drugs with the informant were true, it was not demonstrated at the probable cause hearing that it was physically possible for evidence of those crimes to be found in Swearingen's urine at the time the warrant was finally sought and obtained. These collective deficiencies lead us to believe Detective Ross, an officer who should have been familiar with the requirements of probable cause,[4] could not reasonably have presumed that the warrant he obtained was valid. For the foregoing reasons, we find that the good-faith exception to the exclusionary rule does not apply and that suppression of the evidence obtained as a result of the unlawful search was the appropriate remedy in this case. Appellant's second assignment of error is overruled.

Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment affirmed.*

---

4. Detective Ross testified at the suppression hearing that he had three and a half years of police work experience. During this time, he had sought between fifty to seventy warrants in drug-related cases and was familiar with the requirement of probable cause.

HADLEY, J., concurs.

SHAW, J., dissents.

SHAW, Judge, dissenting.

I respectfully dissent. In reaching their determinations, the trial court and the majority completely disregard significant aspects of the leading decisions of the United States Supreme Court and Supreme Court of Ohio governing the judicial review of search warrants, both as to the proper review of probable cause and as to the proper rationale for deterrence of police misconduct in determining whether to apply the good-faith exception to the exclusionary rule.[5]

Following in large part the erroneous *de novo* analysis of the trial court, the majority refuses to recognize the good-faith conduct of a police officer who personally testified before a magistrate to obtain judicial approval of a search warrant. The basis of the majority decision is its own finding that probable cause in this case was so lacking that official belief in its existence was entirely unreasonable. We can only wonder how the majority can claim a police officer could not reasonably believe the warrant to be valid when two of the five judges involved in the case thus far believe otherwise.[6]

In fact, it is difficult to see what more a police officer acting in good faith could reasonably do to obtain a search warrant. The day after an ongoing drug investigation culminated in the arrest of the defendant, Detective Ross presented himself to the Municipal Court of Marion County as the applicant/affiant for a search warrant to obtain a urine sample from the defendant. He personally appeared before the municipal judge where he presented a cursory affidavit and gave sworn testimony to the judge. During his testimony, the judge asked questions which Detective Ross answered. The entire proceeding before the

---

**5.** See, for example, *State v. George, supra,* 45 Ohio St.3d at 328–331, 544 N.E.2d at 643–647, citing, *inter alia, Illinois v. Gates, supra,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527, *Massachusetts v. Upton* (1984), 466 U.S. 727, 104 S.Ct. 2085, 80 L.Ed.2d 721; *Brinegar v. United States* (1949), 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879; and *United States v. Ventresca* (1965), 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684, as to the appropriate standards for review of probable cause; and *United States v. Leon, supra,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677; *Michigan v. Tucker* (1974), 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182; *Massachusetts v. Sheppard* (1984), 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed.2d 737; and *United States v. Ross* (1982), 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572, as to the appropriate standards for applying the exclusionary rule to police misconduct in search warrant cases.

**6.** At least one federal circuit has held that disagreement of reviewing judges in a case is a proper consideration in evaluating the reasonable reliance of a police officer upon a magistrate's determination of probable cause. See *United States v. Corral–Corral* (C.A.10, 1990), 899 F.2d 927 (holding that police officers should be entitled to rely upon a magistrate's determination of probable cause, especially when reviewing judges cannot agree on sufficiency of affidavit).

judge was preserved on tape. There are no allegations of false or misleading information.

In these circumstances, there is no police misconduct and, hence, no viable deterrence rationale to support imposition of the exclusionary rule. On the contrary, where a police officer may be uncertain as to the existence of probable cause, the procedure followed by Detective Ross, *i.e.*, taking it to a judge to get a determination, is precisely the protocol for initiating a search warrant meant to be encouraged and protected by application of the good-faith exception to the exclusionary rule. See *State v. George, supra,* 45 Ohio St.3d at 330–331, 544 N.E.2d at 645–647.

Moreover, based on the testimony of Detective Ross and supporting documents, the municipal judge had the following information prior to authorizing the search warrant on March 28, 1997:

1. The defendant was currently in custody, having been arrested the previous day on a felony warrant involving two counts of "Aggravated Trafficking."

2. On February 20, 1997, law officers had made two "controlled buys" from the defendant within two hours using an informant to buy the drugs. The defendant was clearly heard on the tape recording of these transactions.

3. The same informant/buyer subsequently told law officers that she has repeatedly smoked crack cocaine with the defendant and that defendant freely gave the drug away to his female friends.

4. On March 27, 1997, the day of his arrest (one day before the warrant request) the police requested a urine sample from the defendant. The defendant responded to the request by saying to the detective, "Why would I want to give you a urine sample just to have another charge put against me?" The detective's conclusion, expressed to the magistrate, was that from a defendant who had "been through the system three, four, or five times before," this statement was an indication that the defendant knew any such test would be positive.

5. The charge for which the warrant was sought was felony drug abuse.

The trial court and the majority have concluded that probable cause is totally lacking in this information because (1) the credibility of the informant is entirely uncorroborated, (2) the information was conclusively stale, and (3) the alleged violation of law was not sufficiently specified. None of these characterizations are accurate.

Within the applicable "totality of the circumstances" test of *Gates* and *George, supra,* the credibility of the informant was corroborated to some extent in the

information relayed to the municipal judge.[7] First, on February 20, 1997, the informant made two "controlled buys" from the defendant. The defendant was "clearly heard" on the tape recording of the controlled buys as the individual selling drugs to the informant and was thus *identified independently by law officers as the individual from whom the informant was actually purchasing the drugs.*[8] And the informant's statement as to the defendant's *repeated* use of crack cocaine was corroborated to some degree by the defendant's apprehensive statement to officers the day before the warrant request, from which the officers and the magistrate had every right to infer that the defendant believed a urine test would be positive.

Whether they are willing to acknowledge them or not, later inferences to the contrary made by the reviewing judges in this case are irrelevant and, in fact, are prohibited by paragraph two of the syllabus of *State v. George, supra,* 45 Ohio St.3d at 325, 544 N.E.2d at 641. Of course, when taken together, the informant's statement about repeated drug use and the defendant's response to the request for a urine sample clearly imply an *ongoing* practice of drug abuse which undermines the claim of staleness in this warrant application as well.[9]

---

7. The extensive, *de novo* emphasis by both the trial court and the majority upon the two-pronged analysis of the informant's veracity and reliability leads to the inescapable conclusion that in both instances, notwithstanding the directive of *Illinois v. Gates, supra,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527, to the contrary, it is actually the older test of *Aguilar v. Texas* (1964), 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 and *Spinelli v. United States* (1969), 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637, which is erroneously being applied. See *State v. George, supra,* 45 Ohio St.3d at 328–329, 544 N.E.2d at 644, fn. 3.

8. The quibbling of the majority over this point is mystifying. The tape-recorded monitoring by police of a drug transaction in which the suspect sells drugs to an informant is inherent in the term "controlled buy" and was what happened in this case according to the facts relayed to the magistrate. I fail to see how the majority can claim that independent police identification of the defendant as the individual selling drugs to the informant on February 20, 1997, in this manner does not qualify as police corroboration of the informant.

9. The determination of staleness in this case ultimately turns upon the trial judge's spontaneous statement in the judgment entry granting the motion to suppress that it is "common knowledge, particularly with law enforcement and members of the judiciary that are regularly confronted with drug cases" that cocaine dissipates from the urine in five days or less. There is absolutely no evidentiary basis or even a nonevidentiary scientific reference for this statement in the record. As such, even assuming the subject could be an appropriate one for judicial notice, it does not qualify in this instance.

Unconcerned, the majority relies on this naked announcement of scientific principle in its own opinion, thus highlighting perfectly the dangers of *de novo* review. For example, one can only conclude that the next trial (or appellate) judge is free to personally opine that the time frame for cocaine dissipation is at least *thirty days* (or perhaps whatever is necessary) in order to determine that a similar warrant is *not* stale. Similarly, the majority ridicules the notion that the addictive properties of cocaine might be a basis for assuming its continued use for a period of thirty days. Yet, on this record, that notion has every bit as much scientific or evidentiary basis as the assumption about dissipation adopted by the majority.

Finally, critical statements about warrant specificity, primarily made by the trial court, are also unfounded. In addition to the reference to *crack cocaine* in Detective Ross's testimony, the municipal judge was clearly aware of the defendant's current status as under arrest and in custody for two counts of aggravated drug trafficking. In direct response to the judge's inquiry, Detective Ross stated that the charge for which the warrant was sought was "felony drug abuse." Consistent with this assertion, the charge for which the warrant was sought is specifically stated on the face of the affidavit for the search warrant as "violations of R.C. 2925.11, Drug Abuse." [10]

In sum, applying the proper "totality of circumstances" test of *Illinois v. Gates, supra,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527, it is my conclusion that the magistrate had a substantial basis for concluding that probable cause existed in this case and that even if the evidence was marginal, this court should defer to the determination of the magistrate as directed in the second syllabus of *State v. George, supra,* 45 Ohio St.3d 325, 544 N.E.2d 640, However, even if we were to conclude that the warrant was not supported by sufficient probable cause, the indicia of probable cause do not fail to the degree necessary to preclude application of the good-faith exception to the exclusionary rule in a case where the affiant/police officer personally appeared before the judge to obtain the warrant.

In its judgment entry granting the motion to suppress, the trial court does not appear to have even considered the syllabus law of the Ohio Supreme Court in *State v. George, supra,* or the holdings of the United States Supreme Court in *Illinois v. Gates, supra,* and *United States v. Leon, supra,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677, in reaching its decision. Instead, the entry sets forth a *de novo* analysis of the search warrant in which the trial court mischaracterizes the factual record and appears to apply the wrong standards for probable cause. Additionally, the court relies heavily upon alleged scientific knowledge for which there is no evidence in the record beyond the personal statement of the trial judge. Unfortunately, despite some reference to the proper standards review, the analysis of the majority does not depart significantly from that of the trial court. As a result, the majority now creates an appellate court decision endors-

---

10. The trial court appears to be under the apprehension that each specific controlled substance sought must be named in a search warrant affidavit. While this is perhaps a good practice where the information is reliably available, there is no legal authority for such a rule cited by that court. Moreover, imposing such a requirement as the trial court appears to do is unnecessary and problematic for law enforcement, implying at best that any additional controlled substances which have not been specifically named in the warrant could not be properly seized without obtaining another warrant—and worse, that the seizure of a named, suspected controlled substance which subsequently tests to be a different controlled substance might be challenged and suppressed because it was not precisely identified in the warrant in the first instance.

ing exactly those things that the United States Supreme Court and the Supreme Court of Ohio clearly state should not be done in reviewing search warrants. I would reverse the decision of the trial court and remand the cause for trial.