The STATE of Ohio, Appellant,

v.

KING, Appellee.

[Cite as *State v. King,* 157 Ohio App.3d 93, 2004-Ohio-2221.]

Court of Appeals of Ohio,
Third District, Marion County.

No. 9–03–42.

Decided May 3, 2004.

94

Jim Slagle, Marion County Prosecuting Attorney, for appellant.

J.C. Ratliff and Jon L. Jensen, for appellee.

———

THOMAS F. BRYANT, Judge.

{¶ 1} Appellant, the state of Ohio ("state"), appeals from the July 15, 2003 order of the Common Pleas Court of Marion County granting the motion of appellee, Kenneth K. King ("King"), to suppress evidence seized during the execution of a search warrant on April 3, 2003.

{¶ 2} On April 3, 2003, the director of the Marion County Humane Society, Lynn Lynn ("Lynn"), and Deputy Dog Warden Tom Price testified before Judge Finnegan in the Municipal Court of Marion County for the purpose of obtaining a search warrant for King's residence, located at 611 Silver Street in Marion, Ohio. Prior to appearing before Judge Finnegan, Lynn first consulted the Assistant Law Director, Jason Warner. Warner advised Lynn that he believed that there was sufficient probable cause to obtain a search warrant for the residence of King. Warner assisted in the preparation of the search warrant application and appeared with Lynn and Deputy Dog Warden Price when they testified before Judge Finnegan.

{¶ 3} The testimony Lynn provided to Judge Finnegan consisted of information provided to her by Dog Warden Price that a scarred pit bull had been seen on the premises of 611 Silver Street in Marion, Ohio. In addition, Lynn provided evidence of King's past history in dog fighting in the form of underground dog fighting magazines that published results of various dog fights. Lynn had confirmed that a dog listed in the magazine, named "Reality," had been registered to King, although Lynn also informed Judge Finnegan that the scarred pit bull reportedly seen outside King's home recently was not the same dog as the one published in the magazine. Lynn also provided testimony that King's address was verified by means of the telephone book and dog registration information regarding his current ownership of a dog named "Korrupted."

{¶ 4} Dog Warden Price presented testimony to Judge Finnegan that the source that reported seeing the scarred pit bull in the front yard of 611 Silver Street was his 12–year–old son. Dog Warden Price testified that his son had

been walking down Silver Street when he observed a scarred pit bull in the front yard of 611 Silver Street and that his son reported his observations to him. Judge Finnegan questioned Dog Warden Price whether his son had any experience or knowledge that would enable him to recognize scarring associated with dog fighting. Dog Warden Price answered in the affirmative, although he did not elaborate further as to the basis of his son's knowledge or experience. Dog Warden Price further testified that he had recently picked up a pit bull with scarring at 618 Silver Street, which was in close proximity to King's residence at 611 Silver Street.

{¶ 5} Following the testimony of Lynn and Dog Warden Price, Judge Finnegan issued a search warrant for the residence located at 611 Silver Street in Marion, Ohio, for the purpose of searching for neglected animals and property or items utilized in dog fighting. On the same day that the search warrant was issued, law enforcement officers executed the search warrant at King's residence. In addition to recovering a scarred pit bull and dog-fighting paraphernalia during the execution of the search warrant, officers also recovered 11.44 grams of crack cocaine and 15 firearms.

{¶ 6} On April 24, 2003, King was indicted on a charge of possession of cocaine in excess of 100 grams of cocaine that is not crack cocaine or ten grams of crack cocaine, a felony of the second degree, in violation of R.C. 2925.11(C)(4)(d). King was also charged with a one-year firearm specification. On May 20, 2003, King filed a motion to suppress the evidence recovered from the execution of the search warrant. A hearing on the motion to suppress was held on June 24, 2003, in the Common Pleas Court of Marion County before Judge Rogers. King's motion to suppress was granted on July 15, 2003, thereby preventing the state from introducing at trial any evidence discovered or seized as a result of the execution of the search warrant.

{¶ 7} The state now appeals from the July 15, 2003 ruling suppressing the evidence as an appeal of right pursuant to R.C. 2945.67(A). The notice of appeal was certified by the state, pursuant to Crim.R. 12(K), that it was not taken for purposes of delay and that the ruling on the motion to suppress had rendered the state's proof with respect to the pending charge against King so weak in its entirety that any reasonable probability of effective prosecution had been destroyed. The state asserts the following two assignments of error:

"The trial court erred in determining that a search warrant was invalid where the issuing magistrate had a substantial basis for concluding that probable cause existed.

"The trial court erred in suppressing evidence obtained by the officers who were acting in objectively reasonable reliance of a search warrant issued by a detached and neutral magistrate."

{¶ 8} In the first assignment of error, the state argues that the trial court failed to follow the standard set forth by the Ohio Supreme Court in *State v. George* (1989), 45 Ohio St.3d 325, 544 N.E.2d 640, for reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant. We agree with the assertion that the trial court failed to follow the proper standard for its review of probable cause, and we take this opportunity to make some clarifications regarding the law on this issue.

{¶ 9} While the trial court states in its July 15, 2003 ruling on the motion for suppression of evidence that "[t]his court is not entitled to undertake a de novo review of the issuing magistrate's determination of whether probable cause existed for the issuance of a search warrant," the trial court did exactly that in its ruling. The trial court conducted cross-examination of affiant Lynn and used information that was revealed in the cross-examination, not presented to Judge Finnegan, in reviewing the sufficiency of probable cause. Furthermore, the trial court determined that there was not a substantial basis for believing the sources of hearsay testimony to be credible or for believing there was a factual basis for the information furnished by the affiants. The trial court determined that there was additional information that could have been obtained by Judge Finnegan and that the failure to obtain such additional information destroyed the reliability of the testimony as to the issue of probable cause.

{¶ 10} In fairness, the approach of the trial court appears to be based in part upon this court's split decision in *State v. Swearingen* (1999), 131 Ohio App.3d 124, 721 N.E.2d 1097, which we note is cited by the trial judge in his ruling and by King in his brief. In *Swearingen,* a case also arising from Marion County, a majority of this court implicitly endorsed and even utilized the same de novo review of a search warrant as the trial court utilized in the case before us. Thus, despite correctly referencing a number of leading decisions from the Ohio and United States Supreme Courts, the majority analysis in *Swearingen* was plainly inconsistent with the syllabus law and holdings of those authorities, including in particular the Supreme Court of Ohio in *State v. George.* As a result, upon further review, it is our conclusion that *Swearingen* was improvidently decided and should no longer be followed.

{¶ 11} In *State v. George,* the Ohio Supreme Court clearly set forth the standard to be used in reviewing the sufficiency of probable cause in affidavits submitted in support of search warrants issued by magistrates: "[N]either a trial court nor an appellate court should substitute its judgment for that of the magistrate by conducting a *de novo* determination as to whether the affidavit contains sufficient probable cause upon which that court would issue the search warrant. Rather, the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed."

*George* at paragraph two of the syllabus, following *Illinois v. Gates* (1983), 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527. In circumstances where an after-the-fact scrutiny of an affidavit submitted in support of the search warrant is conducted by trial and appellate courts, great deference should be accorded the magistrate's determination of probable cause. Id. Furthermore, "doubtful or marginal cases in this area should be resolved in favor of upholding the warrant." Id.

{¶ 12} In its erroneous de novo analysis, the trial court went beyond examining the affidavits as presented for application of the search warrant, instead conducting its own mini-trial by cross-examining witnesses and considering evidence that was not presented before Judge Finnegan. In our review of the sufficiency of probable cause in the affidavits, we are restricted to the affidavits themselves, as that was the evidence before the issuing magistrate, and we cannot consider the additional evidence that was presented to the trial court. Therefore, the evidence for our review consists of the following information presented to Judge Finnegan prior to the issuance of the search warrant[1]:

"1. Lynn Lynn testified that she had good information regarding King's past history of dog fighting.

"2. Lynn testified that King keeps his dogs inside the residence, so it is difficult to observe the condition of the dogs.

"3. Lynn testified that she received a phone call yesterday (April 2, 2003) from the Deputy Dog Warden that a scarred pit bull had been seen in the front yard of the residence at 611 Silver Street.

"4. Deputy Dog Warden Price testified that his twelve-year-old son came home and told Dog Warden Price that he was walking down Silver Street and saw the scarred pit bull in the front yard of 611 Silver Street.

"5. Dog Warden Price testified that his son saw the scarred pit bull on Saturday.

"6. Dog Warden Price responded in the affirmative to Judge Finnegan's question about whether his son had a lot of experience around dogs so that he would know what a scarred dog looked like.

"7. Lynn testified that she had documentation in underground dog fighting magazines that King was involved with Michael Wade and that the underground dog fighting magazine published results of dog fights in which King's dog 'Reality' had fought.

---

1. A tape recording was made of the testimony given before Judge Finnegan for purposes of obtaining the search warrant and was presented to the trial court as a state's exhibit.

"8. Lynn also testified that she had documentation that King was the registered owner of 'Reality.'

"9. Lynn testified that the information in the underground dog fighting magazines showed a past history of King's involvement in dog fighting.

"10. Lynn testified that King's current dog is named 'Korrupt.'

"11. Lynn testified further that, not too long ago, Dog Warden Price picked up a very scarred black pit pull in front of 618 Silver Street, which is close to King's residence at 611 Silver Street.

"12. Judge Finnegan reviewed the purpose for obtaining the search warrant with Lynn and found that Lynn was looking for neglected, injured or abused animals and any property or items utilized in dog fighting.

"13. Judge Finnegan also clarified the term paraphernalia, in relation to dog fighting. Lynn testified that paraphernalia encompassed exercise equipment (e.g. treadmills) and any underground magazines where the results of King's dogs were published.

"14. Judge Finnegan also questioned Lynn regarding the charge(s) in which the search warrant was requested. Lynn testified that the possible charges were animal fighting and animal cruelty. Lynn testified that she wanted to check out the dog and make sure it was not injured.

"15. Lynn testified that she was able to verify that 611 Silver Street was the residence of King by reference in the phone book and dog tags of his current ownership of a pit bull named 'Korrupt.' "

{¶ 13} Under the totality-of-the-circumstances analysis set forth in *Gates,* the question before us in this case is whether we can say that Lynn, Director of the Marion County Humane Society, provided a substantial basis in her affidavit for the magistrate's conclusion that there was a fair probability that abused or injured animals or paraphernalia related to dog fighting would be found in King's residence. *George,* 45 Ohio St.3d at 330, 544 N.E.2d 640, citing *Gates,* 462 U.S. at 238–239, 103 S.Ct. 2317, 76 L.Ed.2d 527. When reviewing the above evidence, keeping in mind our role as a reviewing court, we cannot say that Judge Finnegan did not have a substantial basis for concluding that probable cause existed. *Gates,* 462 U.S. at 238–239, 103 S.Ct. 2317, 76 L.Ed.2d 527. While we can certainly conceive of numerous inquiries Judge Finnegan could have made based on the testimony presented to him, our after-the-fact scrutiny should not take the form of de novo review. As we must give great deference to a magistrate's determination of probable cause, we must find that Judge Finnegan's determination was proper based upon the testimony with which he was presented. *George,* 45 Ohio St.3d at 329–330, 544 N.E.2d 640, citing *Gates,* 462 U.S. at 237, 103 S.Ct. 2317, 76 L.Ed.2d 527, fn. 10. Accordingly, the state's first assignment of error is sustained.

{¶ 14} Having determined that Judge Finnegan had a substantial basis for determining that probable cause existed in this case, we find it unnecessary to address the second assignment of error as it relates to this case, as it has been rendered moot. However, had there not been a substantial basis for Judge Finnegan's determination that probable cause existed, we find that the evidence is still admissible under the "good faith exception" to the exclusionary rule.

{¶ 15} In *United States v. Leon*, the Supreme Court held that "the Fourth Amendment exclusionary rule should not be applied so as to bar the use in the prosecution's case-in-chief of evidence obtained by officers acting in objectively reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause." *George*, 45 Ohio St.3d at 330, 544 N.E.2d 640, citing *United States v. Leon* (1984), 468 U.S. 897, 918–923, 104 S.Ct. 3405, 82 L.Ed.2d 677. The rationale expressed in *Leon* for the "good faith exception" is that the deterrence value of the exclusionary rule loses its force when officers have acted in good faith reliance upon the search warrant. *Leon*, 468 U.S. at 919, 104 S.Ct. 3405, 82 L.Ed.2d 677.

{¶ 16} However, for the "good faith exception" to the exclusionary rule to apply, "the officer's reliance on the magistrate's probable-cause determination * * * must be *objectively reasonable* * * *." (Emphasis added.) *Leon*, 468 U.S. at 922, 104 S.Ct. 3405, 82 L.Ed.2d 677. Therefore, suppression of the evidence is an appropriate remedy where (1) the magistrate or judge was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) the issuing magistrate wholly abandoned his judicial role; (3) an officer purports to rely upon a warrant based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; (4) depending on the circumstances of the particular case, the warrant is so facially deficient that the executing officers cannot reasonably presume it to be valid. *George*, 45 Ohio St.3d at 331, 544 N.E.2d 640, citing *Leon*, 468 U.S. at 923, 104 S.Ct. 3405, 82 L.Ed.2d 677.

{¶ 17} In its ruling suppressing the evidence, the trial court found that Judge Finnegan was misled by affiant Lynn because she failed to give complete information regarding the dates of her evidence; specifically, that the underground dog-fighting magazines were dated 1997 and 1998. The trial court also found that Judge Finnegan's failure to inquire and independently determine the dates of the information presented to him demonstrated that Judge Finnegan "wholly abandoned his judicial role." Further, the trial court determined that Lynn could not have reasonably relied on the search warrant because the testimony she gave lacked any indicia of probable cause.

{¶ 18} However, the record before this court does not suggest any falsity or reckless disregard for the truth on the part of affiant Lynn. There is no evidence

that Lynn intended to mislead Judge Finnegan in any way. In fact, Lynn brought the underground dog-fighting magazines with her when she gave her testimony to Judge Finnegan, although he did not request to look at them, and Lynn clearly advised Judge Finnegan that the dog-fighting magazines showed a *past history* of King. In addition, there is no indication that Judge Finnegan wholly abandoned his judicial role in issuing the search warrant. While the trial court and reviewing court may find that additional information may have been helpful in establishing probable cause for the search warrant, Judge Finnegan's issuance of the search warrant on the information available to him is not indicative of an abandonment of his judicial role. Furthermore, we cannot say, from the standpoint of the officers executing the warrant, that the warrant approved by Judge Finnegan and the supporting affidavit lacked any indicia of probable cause so as to render the reliance on the warrant entirely unreasonable. Accordingly, we find that this search falls within the good-faith exception to the exclusionary rule set forth in *Leon* and *George*, and should be upheld even if the warrant were lacking in probable cause as alleged.

{¶ 19} Based on our determination of the first and second assignments of error, we reverse the ruling of the Common Pleas Court of Marion County and remand the cause for proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

SHAW, P.J., and CUPP, J., concur.