OPINION
Following his plea of no contest to four counts of Receiving Stolen Property, defendant George L. Gibler appeals the decision of the judgment of the Defiance County Common Pleas Court denying his motion to suppress the evidence upon which the charges were based.
On February 10, 1999, Defiance County Sheriff's Deputy Arnie Hardy filed applications for two search warrants in connection with an investigation into three burglaries that had occurred in the area. Deputy Hardy had conducted an interview with Ronald J. Steel, Jr., who alleged that he had been involved with a burglary that had occurred nine days earlier at a residence in Oakwood, Ohio:
 Steel explained to Officer Hardy that he went to the Westrick residence and spoke to a Beth Westrick, who explained to Steel that she was leaving and no one would be at the residence for several hours. Steel then contacted Danny Engel who in turn went to the Westrick residence, entered the residence and removed a Gateway 2000 CPU; 22 Caliber Stainless Steel with black fiber stock Marlin Winchester Rifle; Thompson .54 Caliber Mussel [sic] Loader and five (5) two dollar bills. Steel later was contacted by Engel who explained that he (Engel) had taken the above items to the George Gibler and Dave Whitmore residence at 1035 Ottawa Avenue, Defiance, Ohio, where the items were sold to George Gibler. Steel further explained that he later went to the George Gibler residence at 1035 Ottawa Avenue and in fact observed the two stolen weapons that are described above at the residence.
 In interviewing Steel, Steel explained to Deputy Hardy that he has known George Gibler his whole live [sic] as Ronald Steel is related to Gibler. Steel further stated that for the past nine (9) years himself and Gibler have been involved in numerous thefts from both residences and businesses of computer components, tools, weapons, tires, and miscellaneous other items. Steel further stated during this period of time these items would be stolen from the above described locations and taken to Gibler's residence where he resided at the time [sic]. Gibler would later sell these items, paying Steel for his assistance in the thefts. Steel further states that over the past year Gibler has lived at 1035 Ottawa Avenue, Defiance, Ohio, along with David Whitmore. Steel stated that over the past year he has taken numerous stolen items to the Gibler residence on at least one hundred (100) occasions, and in turn Gibler would pay Steel for these items. Steel further stated that Gibler would take some of the items and store them in a Wells Fargo trailer which is normally parked in the driveway of 1037 Ottawa Avenue, which residence is also used by Gibler. Steel further stated that he has been in the residence at 1035 Ottawa Avenue over the past year and has seen numerous stolen items on every occasion, both at the residence and in the Wells Fargo trailer. Steel further stated that approximately six months ago he
(Steel) recruited Danny Engel to commit burglaries for Gibler and that over this six month period of time Engel has been taking stolen property to the Gibler residence, 1035 Ottawa Avenue, Defiance, Ohio, and selling it to Gibler. Steel further states that Gibler would then take the stolen property out of state to flea markets where the stolen property would be sold. Steel further states that every time he has been in the residence or seen the inside of the trailer over the past year, there was always stolen property being stored in both locations.
February 10, 1999 Affidavit of Deputy Arnie Hardy in support of Application for Search Warrants, at *1. Based on this information, as well as a background check on defendant Gibler that revealed an extensive criminal theft record and an investigation confirming that defendant did indeed live at 1035 Ottawa Avenue and that there was in fact a Wells Fargo trailer in the driveway at 1037 Ottawa Avenue, Deputy Hardy applied for warrants to search the residence and the trailer for "certain property[,] namely"
 COMPAQ 72-12 CPU SERIAL #L607HWG; GATEWAY CP-350 PRO PC SERIAL #SWRKIT168ACUS; GATEWAY 2000 CPU; 22 CALIBER STAINLESS STEEL WITH BLACK FIBER STOCK MARLIN WINCHESTER RIFLE; THOMPSON 52 CALIBER MUSSEL [sic] LOADER; FIVE (5) TWO DOLLAR BILLS; TOOLS; SEMI TRUCK TIRES; letters, correspondence, records/computer records relating to the purchase and sales of stolen items; United States currency relating to the profits from the sale of stolen items.
February 10, 1999 Search Warrant for 1035 Ottawa Avenue, at *1 and February 10, 1999 Search Warrant for White Wells Fargo Cargo Trailer located at 1037 Ottawa Avenue, at *1. Apart from Ronald Steel's statements, Deputy Hardy's single affidavit did not describe any other aspects of the investigation of the burglary into the Westrick residence, and although the affidavit alleges that "items * * * stolen from the above described locations [were] taken to Gibler's residence," the only theft location described in the affidavit was the Westrick residence. Moreover, the affidavit contained no allegation that two of the three computers, the tools or the truck tires were the fruits of a theft from the Westrick residence, and no evidence relating to any other thefts was presented in conjunction with either warrant application.
Notwithstanding these discrepancies, a judge signed and approved both warrants, which were executed later that same day. The search of the residence at 1035 Ottawa Ave. revealed a computer fitting the description of the one stolen from the Westrick residence. Compare Search Warrant Inventory of 1035 Ottawa Avenue, at ¶ 9 with February 10 Affidavit in Support of Search Warrant, at *1. In addition, numerous items not named in the warrant were also seized from the residence.
Instead of searching the Wells Fargo trailer for particular items, the entire trailer and all its contents were seized and transported to the Sheriff's office. The subsequent inventory of the trailer's contents revealed a computer matching one named in the warrant, but not the one stolen from the Westrick residence. Numerous miscellaneous "tools" were also recorded in the inventory, as well as over a hundred other items, including computer software, computer parts, a global positioning system, a pair of men's sandals, "several iron-on patches," defendant's library and AmVets membership cards, bungee cords, a U.S. Army trenching tool, and a pair of scuba flippers.
Subsequent to the execution of the two warrants the Defiance County Sheriff's department interviewed Danny Engel, who at first denied any involvement with any thefts, but later admitted that he had he had driven a car and helped Ron Steel load up goods Steel had stolen from a home in Lake Christy Meadows. He stated that he assumed Steel had placed items stolen from the house in a trash can that was loaded into the back of the car, but that he never actually saw any stolen items. He denied involvement in other burglaries, although he admitted that he knew Ron Steel had planned to steal a computer from a trucking company on Spruce Street in Defiance. Finally, Engel specifically denied knowing defendant George Gibler or where defendant Gibler lived. He did admit that he knew Steel was "doing shit for some guy named George" and when he was told that defendant lived on Ottawa Avenue, he stated that he had been outside the residence once with Steel, but had never gotten out of the car.
On February 16, 1999 Deputy Hardy again interviewed Ronald Steel, who for the first time stated that defendant had a storage locker containing stolen items:
 Steel advised Deputy Hardy that George Gibler has had a storage unit at [the] State Route 15/18 split for the past two plus years. Steel further advised that he (Steel) would take items that he (Steel) had stolen such as[:] power tools, hand tools, semi tires, wrenches, CB equipment[,] jewelry[,] and any other items which Steel had removed unlawfully from residences and businesses to Gibler's residence on Ottawa Avenue and Gibler would then transfer these items either to the storage facility described above or would remove them from the state where they would be sold [sic]. Steel further stated that the stolen jewelry was taken to the storage unit where it was melted down by George Gibler. * * * * Steel further advised that there is a red and white Corvette in this storage facility, which was placed there by George Gibler, which has no Vehicle Identification Number nor a title.
February 16, 1999 Affidavit of Deputy Arnie Hardy in support of Application for Search Warrant, at *2. Deputy Hardy subsequently contacted the owner of the storage facility at the specified location, who confirmed that defendant Gibler had in fact been renting a storage unit at the facility for about two and a half years. Based this information, as well as the fruits of two previous searches, Deputy Hardy applied for a warrant to search the storage locker for "certain property, namely"
 POWER TOOLS, HAND TOOLS, WRENCHES, CB EQUIPMENT, JEWELRY, FIVE 950 TWO DOLLAR BILLS, SEMI TRUCK TIRES, CORVETTE, letters, correspondence, records/computer records relating to the purchase and sales of stolen items; United States currency relating to the profits from the sale of stolen items.
February 16, 1999 Search Warrant for Tri-Star Development Storage Unit Number 42, at *1. Deputy Hardy's affidavit in support of the third search warrant was identical to that offered in support of the first two warrants, but also contained averments that when the first two warrants were executed, "[n]umerous stolen items were recovered, both from the residence and the Wells Fargo Cargo trailer," as well as recounting the February 16 interview of Ronald Steel. Id. at *2. Additionally, the summary of Deputy Hardy's February 16 interview with Steel notes that Steel had never been to the storage locker, but had been told about it by the defendant. This fact does not appear in Deputy Hardy's affidavit. Compare Incident Number 01-99-000616, 2/16/1999 Narrative Supplement, at *1 with February 16 Affidavit, at *2.
The application for warrant was presented to a different judge than the one who had approved the first two warrants, was signed and approved, and was executed at 6 p.m. on February 16, 1999. Once again, it appears that the deputies who executed the warrant took the entire contents of the storage locker in addition to the named items; the inventory of seized items comprises seven-and-a half pages.
Of all of the property seized pursuant to the three search warrants, it appears that only two computers, a color copier, and some "miscellaneous tools and equipment" were shown to have been stolen goods.[1] A subsequent consent search of the garage at defendant's Ottawa Avenue home did reveal the two guns that had been stolen from the Westrick residence. Of the stolen items, only the computers, the guns, and the tools were named on the face of the warrants (although the guns were not seized pursuant to the warrants), and of those items, only one of the computers and the guns were mentioned in Deputy Hardy's affidavit.
On March 8, 1999, defendant was indicted by the Defiance County Grand Jury on seven felony charges: three fifth degree felony counts of receiving stolen property, one fifth degree felony count of breaking and entering, one fourth degree felony count of breaking and entering, one third degree felony count of grand theft, and one second degree felony count of engaging in a pattern of corrupt activity.
On May 28, 1999, the defendant filed a motion to suppress evidence. At a hearing on the motion, defense counsel questioned Deputy Hardy as to why items unmentioned in the affidavit appeared on the fact of the warrant. Deputy Hardy testified that he had been investigating "three different B and Es," and that those items were suspected to be from two completely different break-ins, one of a residence and one of a trucking company. Transcript of Hearing on Motion to Suppress, at * * 14-15. He further admitted that only the Westrick burglary was described in the affidavit, that "there was no information in the affidavit to indicate this specific property was believed to be stolen [or] at the [defendant's] residence," and that such information "[s]hould have been in the affidavit." Id. at 18. See also id. at 25-26. Deputy Hardy also testified that although he and other law enforcement officials seized multiple items not named on the face of any of the warrants, he could not determine at the time they were seized that they were stolen. See id. at *54-55 and id. at 61. The law enforcement officers instead just seized anything that looked "brand new," because Steel had allegedly told them that anything new in the house and the trailer was stolen. Id. at *54. Deputy Hardy stated that he had seized the trailer and towed it away "under the guidance of the prosecutors," id. at 61, and stated that they had seized all the items from the storage locker because Steel had informed them that "everything out there should be stolen." Id. at *69.
The trial court overruled the defendant's motion to suppress on August 3, 1999, and on January 7, 2000, the State filed a four-count bill of information charging the defendant with one fourth-degree felony, one fifth-degree felony, and two first-degree misdemeanor counts of receiving stolen property. Count one alleged that the defendant knowingly possessed stolen "Compaq Presario 7212 and Gateway 2000 computers." Count two alleged the defendant knowingly possessed a stolen "22 Magnum rifle and [a stolen] 54 caliber rifle." Count three alleged that defendant possessed a stolen "Hewlett Packard Color Copier 210," and count four alleged that defendant knowingly possessed "miscellaneous [stolen] tools and equipment." Defendant pled no contest to the four charges in the bill of information, and all other charges were dismissed. Defendant now appeals the trial court's ruling on the motion to suppress, and asserts a single assignment of error.
 The trial court erred when it failed to grant defendant/appellant's motion to suppress, which motion should have been granted for the following reasons:
 A) The deputy misled the court in his application for a search warrant by omitting critical information relative to an unreliable criminal informant and contradictory information provided by him;
 B) The deputy failed to properly corroborate the information; and
 C) All three searches were exploratory in nature and did not satisfy the plain view requirements.
As an initial matter, we must note that the State has argued in its brief that defendant's assignment of error does not address the two guns that are the subject of count two of the bill of information.
 The two (2) guns which form the basis of Count Two of the Four Count Bill of Information were seized pursuant to a consent to search the detached garage at 1035 Ottawa Avenue granted by Dave Whitmore, owner of the residence and brother of the Defendant/Appellant, on February 11, 1999. Therefore, the arguments in Defendant/Appellant's Brief have no bearing on Count Two of the Four Count Bill of Information.
Brief of Appellee at *8. Defendant has not argued and the record does not establish that Mr. Whitmore's consent to search the garage was vitiated in any way. Cf., e.g., Brown v.Illinois (1975), 422 U.S. 590. We therefore believe the State's position on this issue to have merit.
In addressing the substance of defendant's assignment of error, we begin with Crim.R. 41, which governs the issuance and execution of search warrants in Ohio. Subsection (C) of the rule reads, in pertinent part:
 A warrant shall issue under this rule only on an affidavit or affidavits sworn to before a judge of a court of record and establishing the grounds for issuing the warrant. The affidavit shall name or describe the person to be searched or particularly describe the place to be searched, name or describe the property to be searched for and seized, state substantially the offense in relation thereto, and state the factual basis for the affiant's belief that such property is there located. If the judge is satisfied that probable cause for the search exists, he shall issue a warrant identifying the property and naming or describing the person or place to be searched. The finding of probable cause may be based upon hearsay in whole or in part, provided there is a substantial basis for believing the source of the hearsay to be credible and for believing that there is a factual basis for the information furnished.
Crim.R. 41(C) (emphasis added). "In determining the sufficiency of probable cause in an affidavit submitted in support of a search warrant, `[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the `veracity' and `basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" State v. George (1989), 45 Ohio St.3d 325, paragraph one of the syllabus, quoting Illinois v.Gates (1983), 462 U.S. 213, 238-39. Although the standard to be applied by the magistrate reviewing the search warrant application is probable cause, reviewing courts are to give great deference to a magistrate's determination as to the existence of probable cause. See George, 45 Ohio St.3d 325 at paragraph two of the syllabus. "[T]he duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed," and a doubtful or marginal case should be resolved in favor of upholding the validity of the warrant and allowing the fruits of the search to be admitted into evidence. Id. Moreover, evidence obtained by a law enforcement officer acting in objectively reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause will not be barred by the application of the exclusionary rule. See George, 45 Ohio St.3d 325 at paragraph three of the syllabus, citing United States v. Leon (1984), 468 U.S. 897. Finally, an officer executing a valid warrant may seize an item not described in the warrant if "it was `immediately apparent' that the item was incriminating." State v. Waddy (1992),63 Ohio St.3d 424, 442, citing Coolidge v. New Hampshire (1971),403 U.S. 443, 466. See also Horton v. California (1990),496 U.S. 128. Keeping in mind the foregoing principles, we will begin by discussing the two searches conducted on February 10, as the issues regarding both searches are similar.
1035 Ottawa Ave., and the Wells Fargo Trailer parked at 1037Ottawa Ave.
Among the one hundred and fifty enumerated items seized from the Ottawa Avenue searches were the two computers that form the basis of count one of the bill of information and the color copier that forms the basis of count three of the bill of information.[2] Defendant contends that this property was improperly seized, and alleges multiple defects in relation to the warrants for and searches of his residence at 1035 Ottawa Avenue and his storage trailer parked at 1037 Ottawa Avenue.
In relation to the warrants, defendant first alleges that Ronald Steel is an unreliable informant and the information he gave to Deputy Hardy was not properly corroborated under the doctrine established by the U.S. Supreme Court in Illinois v.Gates (1983), 462 U.S. 213. See also State v. Swearingen (1999),131 Ohio App.3d 124, 134-35 (Shaw, J., dissenting). In Gates, the United States Supreme Court determined that an unidentified informant's "reliability," "veracity," and "basis of knowledge" should not be examined as separate elements, but rather are merely part of the totality of the information to be weighed by the magistrate in making a probable cause determination. See Gates,462 U.S. at 230. Here, Ronald Steel's identity, criminal history and reliability were merely elements for the magistrate's "totality of the circumstances" consideration. See, e.g., Statev. Phillips (Nov. 5, 1992), Marion App. No. 9-92-92, unreported, 1992 WL 328487 at *2. However, Steel's credibility as to the allegations in Deputy Hardy's affidavit is bolstered by the fact that Deputy Hardy independently confirmed several of the facts alleged in the affidavit.
 [T]his officer checked and it was found that George Gibler and Dave Whitmore do in fact live at 1035 Ottawa Avenue, Defiance
Ohio, and that they also use the residence of 1037 Ottawa Avenue, Defiance Ohio. Further this officer also checked and found a Wells Fargo Cargo trailer backed into the driveway at 1037 Ottawa Avenue, Defiance Ohio, as stated by Steel. Further, in checking the criminal history records of the State of Ohio, [this officer] found that Gibler has numerous arrests and convictions for various theft offenses from Petty Theft, Receiving Stolen Property, Possession of Criminal Tools and also has convictions and charges in the State of Indiana.
February 10, 1999 Affidavit of Deputy Hardy in support of Application for Search Warrant, at *1. Based on the foregoing, we believe that the magistrate had substantial evidence corroborating Ronald Steel's story as recounted in Deputy Hardy's affidavit. Cf. Gates, 462 U.S. at 225-233 (law enforcement observations of defendant's movements sufficient to corroborate anonymous source's allegations for purposes of probable cause determination). We therefore conclude that insofar as they relate to the to the items discussed in Deputy Hardy's affidavit, the warrants for 1035 Ottawa Avenue and the trailer parked at 1037 Ottawa Avenue were valid and supported by probable cause.
However, defendant next observes that there are several items named on the face of both warrants that are never explained or even mentioned by Deputy Hardy's affidavit in support of the warrants. It is undisputed that two of the three computers (listed by serial number), the tools, and the truck tires described on the face of the warrant were not stolen during the break-in described in Deputy Hardy's affidavit, and were in fact the fruits of other crimes not described or mentioned in the affidavit.[3] Moreover, the State has never asserted that the magistrate who authorized the two warrants was ever informed that the foregoing items were the fruits of a different theft. Instead, the State contends that the nature of the activity alleged in the affidavit demonstrates probable cause for these items. Deputy Hardy's affidavit does observe that "Steel further stated that for the past nine (9) years himself and [defendant] have been involved in numerous thefts from both residences and businesses of computer components, tools, weapons, tires, and miscellaneous other items." February 10, 1999 Affidavit of Deputy Hardy, at *1. However, we fail to see how this general statement of activity can provide probable cause to search for the specific
items listed on the face of the warrant. Cf. Ante at *11 (quoting Crim.R. 41(C)). Even if we presume that this allegation is not stale evidence, cf. State v. Hollis (1994), 98 Ohio App.3d 552 [98 Ohio App.3d 549] (allegation that investigation was ongoing for five years held to be stale evidence), it is not sufficient for a magistrate to find probable cause that defendant was involved in the thefts that those specific items were the fruits of, and it is certainly not probable cause to believe that those specific items were likely to be found at the defendant's residence. At the suppression hearing, Deputy Hardy admitted no facts relating to other break-ins and none of the items from other break-ins were included in his affidavit. See Transcript of Hearing on Defendant's Motion to Suppress, at *15.
We conclude that insofar as the warrant authorized law enforcement to search for items stolen during a theft never mentioned in the affidavit, it is unsupported by probable cause. Moreover, we do not believe that the affidavit provides a substantial basis for the magistrate's decision that probable cause to search for those items did exist. See George, 45 Ohio St.3d 325
at paragraph two of the syllabus. Accordingly, we must determine whether the search and seizure of the items not mentioned in the affidavit may be justified under the "good faith" exception to the warrant requirement. Cf. id. at paragraph three of the syllabus.
As we have observed, evidence obtained by a police officer acting in objectively reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause will not be barred by the application of the exclusionary rule. See, e.g., id., citingUnited States v. Leon (1984), 468 U.S. 897. However, a search is not "objectively reasonable" if a reasonably well-trained officer would have recognized the search to be illegal despite the magistrate's authorization. See Leon, 468 U.S. at 923. Defendant argues that because two of the three computers, the tools and the truck tires were not mentioned in the affidavit, a reasonably well-trained officer would have recognized that it was improper to rely on the warrant to seize those items.
We disagree. In Leon, the United States Supreme Court held that where a warrant is "based on an affidavit `so lacking in indiciaof probable cause as to render official belief in its existence entirely unreasonable'" it is inappropriate to apply the good faith exception. Id. (emphasis added), quoting Brown v. Illinois,422 U.S. 590, 610-611 (Powell, J., concurring in part). In this case, the warrant clearly stated probable cause to search for some items and lacked probable cause for other items. However, there were at least general allegations of an ongoing theft enterprise contained in the affidavit, which was reviewed and approved by a neutral and detached magistrate. While under the totality of the circumstances the warrant was not supported by probable cause, we cannot say that the lack of probable cause was so glaring that it was unreasonable for law enforcement officers to rely on the magistrate's decision that probable cause existed.
However, defendant has also argued that other evidence gathered by Deputy Hardy prior to his application for the warrant specifically indicated that Ronald Steel's assertions were unreliable, and that Deputy Hardy failed to disclose this evidence in his affidavit or warrant application. He also asserts that Deputy Hardy failed to include information as to Ronald Steel's prior theft convictions. Defendant essentially argues that Deputy Hardy concealed evidence relating to the validity of Steel's assertions from the magistrate when he applied for the two search warrants on February 10. He contends that these omissions were intended to bolster the account of the facts contained in the affidavit, and that they undermine Steel's credibility, taint the determination of the magistrate and render the warrant invalid. In State v. Waddy (1992), 63 Ohio St.3d 424, the Ohio Supreme Court noted:
 To successfully attack the veracity of a facially sufficient search warrant affidavit, a defendant must show by a preponderance of the evidence that the affiant made a false statement, either "intentionally, or with reckless disregard for the truth "Reckless disregard" means that the affiant had serious doubts of an allegation's truth. Omissions count as false statements if "designed to mislead, or * * * made in reckless disregard of whether they would mislead, the magistrate."
 Id. at 441 (citations omitted). See also Franks v. Delaware
(1978), 438 U.S. 154, 155-156, and United States v. Colkley
(C.A. 4, 1990), 899 F.2d 297, 301. Specifically, defendant notes that during the interview described in the affidavit, Ronald Steel implicated another man, Danny Engle, in the burglary of the Westrick home, but when Engle was interviewed he denied any knowledge or involvement. Defendant argues that Deputy Hardy's failure to include Engle's denial in his affidavit was "designed to mislead, or * * * [done] in reckless disregard of whether [it] would mislead, the magistrate."Colkley, 899 F.2d 297, 301, quoted in Waddy,63 Ohio St.3d at 441.
First, we must note that Deputy Hardy testified at the suppression hearing that he interviewed Danny Engle on February 10, but not until after he had already applied for the search warrants. See Transcript of Hearing on Motion to Suppress, at *20. We fail to see how the failure to include Engle's denials was "designed to mislead" a magistrate who had issued a search warrant prior to the denials even being made. However, even if we are to assume that Deputy Hardy's failure to include Engle's denials and Steel's prior convictions were omissions knowingly "designed to mislead" the magistrate that issued the warrant, we do not believe the omissions substantially affected the magistrate's determination of probable cause. As recounted in Deputy Hardy' affidavit, Steel supplied a detailed accounting of his own involvement in the burglary of the Westrick residence, as well as Engle's role and defendant's roles in the crime. In this instance, we believe that Steel's prior theft record bolsters his credibility as to the commission of offenses rather than undermining it, and we do not believe that Engle's blank denial of involvement would have had a significant impact on the magistrate's decision. Cf. Waddy, 63 Ohio St.3d at 441-42
(omission of facts tending to prove place to be searched was not defendant's residence were not material when place was in fact defendant's residence). Moreover, in this case "even had the omitted information been included, the affidavit would have stated probable cause to order a search." Id. at 442; cf. Franks,438 U.S. at 156 (search warrant based in part on misrepresentation in affidavit remains valid if affidavit demonstrates probable cause without misrepresentation). We therefore conclude that defendant has failed to establish that the omissions were made with the intent to mislead the magistrate, or that the magistrate was in fact misled.
Finally, the defendant contends that both searches were overbroad, and that most of the items seized pursuant to the warrant were not listed in the warrant and were not ever shown to be stolen goods. Although the State contended that most of the items were appropriately seized under the so-called "plain view" exception to the warrant requirement, defendant argues that they were improperly seized under State v. Waddy (1992), 63 Ohio St.3d 442[63 Ohio St.3d 424], which held that "[u]nder [the plain view] doctrine, an officer may seize an item without a warrant if the initial intrusion leading to the item's discovery was lawful and it was `immediately apparent' that the item was incriminating. * * * `The `immediately apparent' requirement * * * is satisfied when police have probable cause to associate an object with criminal activity.'" Id. at 442-43 (citations omitted).
As to this argument, we must agree with the defendant. Deputy Hardy's testimony at the suppression hearing establishes that the procedure followed in executing the warrant was to seize everything that looked new under the assumption that it was stolen "[u]ntil we could prove otherwise." Transcript of Hearing on Motion to Suppress, at *54. Deputy Hardy further admitted that he could not tell what specific items seized were stolen. See id. at * * 54-56. By Deputy Hardy's clear testimony, those items seized that were not enumerated in the warrant did not satisfy the requirements of the "plain view" exception. Cf. Waddy,63 Ohio St.3d at 443-44.
Specifically, the record establishes that the Hewlett-Packard Copier that is the basis of count three of the bill of information is not mentioned in the affidavit supporting the search warrant and is not enumerated on the face of the warrant. Moreover, defendant has clearly established that the incriminating nature of the copier was not "immediately apparent" at the time it was seized, and was not in fact discovered until after the items were inventoried. We therefore conclude that the copier does not meet the requirements of State v. Waddy, 63 Ohio St.3d at 443-44, and must be suppressed.
Tri-Star Storage Unit Number 42
On February 16, 1999 Deputy Hardy prepared a new application to search a storage locker owned by the defendant. In support of the search warrant application, Deputy Hardy executed a new affidavit that included the entire unedited text of his previous affidavit, but appended new information to the end.
 On February 10, 1999, officers executed two search warrants: one for 1035 Ottawa Avenue, and one for the Wells Fargo Cargo Trailer parked in the driveway of 1037 Ottawa Avenue. Upon opening the Wells Fargo Trailer, it was found to be loaded with numerous computer software and computer equipment [sic], as well as other items. Numerous stolen items were recovered, both from the residence and the Wells Fargo Cargo trailer.
 On February 16, 1999, Deputy Hardy again talked with Ronald Steel. Steel advised Deputy Hardy that [defendant] has had a storage unit at State Route 15/18 for the past two plus years. Steel further advised that he (Steel) would take items that he (Steel) had stolen such as[:] power tools[;] hand tools[;] semi tires[;] wrenches[;] CB equipment; jewelry; and any other items which Steel had removed unlawfully from residences and businesses to [defendant]'s residence on Ottawa Avenue and [defendant] would then transfer these items either to the storage facility described above or would remove them from the state where they would be sold. Steel further stated that the stolen jewelry was taken to the storage unit where it was melted down by [defendant]. Steel further advised Deputy Hardy that over the nine year period that he was involved in the thefts and breakings and enterings [sic] he has stolen numerous items and that [defendant] was with him on most occasions, making it impossible for him (Steel) to remember all the hundreds and hundreds of stolen items. Steel further advised that there is a red and white Corvette in this storage facility, which was placed there by [defendant], which has no Vehicle Identification Number nor a title.
February 16, 1999 Affidavit of Deputy Hardy in support of Application for Search Warrant, at *2. Deputy Hardy's affidavit also included an averment that he had independently confirmed the existence and location of the storage unit, as well as the fact that it had been registered to the defendant for at least two years. Based on this affidavit, the reviewing magistrate authorized a warrant to search the locker for:
 POWER TOOLS, HAND TOOLS, WRENCHES, CB EQUIPMENT, JEWELRY, FIVE (5) TWO DOLLAR BILLS, SEMI TRUCK TIRES, CORVETTE, letters, correspondence, [and] records/computer records relating to the purchase and sales of stolen items * * *.
Search Warrant for Tri-Star Storage Unit Number 42, at *1. Once again, it appears that the law enforcement officials who executed the warrant took the entire contents of the storage locker, including thirteen boxes containing tools, decks of cards, video tapes, diving equipment, and 7 books of defendant's personal checks, apparently because "Ronnie told us everything out there should be stolen." Transcript of Hearing on Motion to Suppress, at *69. However, of the items seized, it appears that only "miscellaneous tools and equipment" were stolen goods.[4]
Defendant challenges the search of the storage locker based upon theories similar to those we have already discussed. However, we believe that in this instance, the warrant was supported by probable cause. Stolen goods were in fact discovered on the Ottawa Avenue properties, both during the execution of the warrants and during the subsequent consent search of the detached garage, and this both confirmed Ronald Steel's original confession and established his credibility to the extent necessary to show probable cause to search for the items enumerated on the warrant for the storage locker. While defendant has again alleged that Deputy Hardy's affidavit is misleading and omitted contradictory information, the information omitted merely consists of minor disputes of fact between Steel and Danny Engel. The primary facts that Steel, Engel and the defendant were involved in a series of thefts, and that stolen property was being stored at the storage locker — were not disputed, because Engel admitted the former and had no information about the latter. We therefore cannot say that under the totality of the circumstances the any of the defects alleged by the defendant are sufficient to invalidate the ample probable cause contained in the affidavit. Cf., e.g., George,45 Ohio St.3d at 328-330.
Finally, defendant again contends that many of the items seized were not named on the warrant. See Waddy,63 Ohio St.3d at 443-44. However, our review of the warrant inventory confirms that the vast majority of the items fall within the language of the warrant, which authorized, among other things, the seizure of "power tools, hand tools, wrenches * * * letters, correspondence, [and] records/computer records relating to the purchase and sales of stolen items." Search Warrant for Tri-Star Development Storage Unit Number 42, at *1 (emphasis added). Moreover, while certain specific items seized clearly do not meet the requirements of the plain view exception, it does not appear that any of these items have formed the basis of any of the charges in the bill of information, and therefore are not subject to exclusion by this Court.
For the foregoing reasons, defendant's single assignment of error is sustained only insofar as it relates to count three of the bill of information, and is overruled insofar as it relates to counts one, two and four of the bill of information. The judgment of the Defiance County Court of Common Pleas is affirmed in part and reversed in part, and remanded for further proceedings consistent with this opinion.
 ___________________________ Shaw, J.
HADLEY, P.J., and WALTERS, J., concur.
[1] Testimony offered at the suppression hearing obliquely implies that a Gateway GP6-350 computer seized from the Wells Fargo trailer might have been stolen from a trucking company, but the serial number on the computer seized does not match the serial number of the computer described in the warrant. Furthermore, neither the State's amended indictment nor the bill of information to which the defendant pled no contest list this computer as stolen goods.
[2] It is unclear what particular items comprise the "miscellaneous tools and equipment" that form the basis of count four of the bill of information, and equally unclear whether those items were seized from the Ottawa Ave. properties or from the storage locker. Our discussion in this section applies with equal force to any items seized during the February 10 search of the Ottawa Ave. properties that provide a basis for count four of the bill.
[3] At the suppression hearing, Deputy Hardy admitted that these items were suspected to have been stolen during break-ins at two other locations. He also admitted that his February 10 affidavit did not provide any information indicating that those break-ins had occurred, or information showing that Steel or the defendant had been involved those two break-ins. See Transcript of Hearing on Motion to Suppress at *14-15. Moreover, none of the witnesses at the suppression hearing could explain the absence of information about the two other burglaries, other than to describe it as some sort of oversight. See id. at * * 15-18.
[4] See fn. 2, ante.