[Cite as *State v. Waiters*, 2020-Ohio-4126.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff - Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| VICTOR WAITERS, | : | Case No. 2019CA00011 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:               Appeal from the Stark County Court
                                       of Common Pleas, Case No.
                                       2018CR0076

JUDGMENT:                              Affirmed

DATE OF JUDGMENT:                      August 19, 2020

APPEARANCES:

For Plaintiff-Appellee                 For Defendant-Appellant

JOHN D. FERRERO                        George Urban
Prosecuting Attorney                   116 Cleveland Ave. North Suite 808
Stark County, Ohio                     Canton, Ohio 44702

By: KATHLEEN O. TATARSKY
Assistant Prosecuting Attorney
Appellate Section
110 Central Plaza South – Suite 510
Canton, Ohio   44702-1413

*Baldwin, J.*

{¶1}   Defendant-appellant Victor Waiters appeals from the denial by the Stark County Court of Common Pleas of his Motion to Suppress. Plaintiff-appellee is the State of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2}   On January 12, 2018, appellant was indicted on one count of aggravated trafficking in drugs in violation of R.C. 2925.03(A)(2)(C)(1)(d), a felony of the second degree, one count of aggravated possession of drugs in violation of R.C. 2925.11(A)(C)(1)(c), a felony of the second degree, and one count of having weapons while under disability in violation of R.C. 2923.13(A)(3), a felony of the third degree. The indictment also contained forfeiture specifications. At his arraignment, appellant entered a plea of not guilty to the charges.

{¶3}   Appellant filed a Motion to Suppress. A hearing on such motion was held on April 11, 2018. At the hearing, Agent Joseph Bays of the Canton Police Department testified that he was assigned to the Metropolitan Narcotics Unit and that in October of 2017, he began investigating appellant after learning that he was selling suspected heroin. Agent Bays developed a confidential informant (CI). A reliable source reported that appellant would not sell out of his house, but rather traveled to a site where he met the buyer and exchanged heroin for money. Agent Bays identified two addresses for appellant- 1613 Second Street Northeast in Canton and 1613 2nd Street Northeast in Canton.

{¶4}   Agent Bays testified that he followed a routine protocol in conducting controlled buys using a CI. The CI was searched for contraband, outfitted with a recording

device and given photocopied bills to make the buy. After the buy, the CI is taken to a location away from where the buy occurred, patted down, searched for contraband/currency and the drugs are sent to the crime lab for analysis.

{¶5} Agent Bays testified that on October 26, 2017, a controlled buy from appellant using a CI occurred. The CI advised him that a male by the name of Vic or Victor was selling heroin. After being patted down and having the routine protocol performed, the CI made a phone call, was patted down, was issued the money and deployed in the area around 14th Street and Fulton. The CI walked over to a woman in the area who led him to appellant where the CI purchased heroin. Agent Bays was too far away to observe the buy. After the buy, the CI walked back to the undercover vehicle, got in and handed over a plastic bag containing a powdery substance that later tested positive for carfentanil.

{¶6} A second buy occurred on October 31, 2017. Once again, the same CI was patted down and searched for contraband/currency. Officers knew appellant's name at that point and the vehicle that he was using for the drop off. They located the vehicle at the 26th Street Northeast address and set up surveillance at the house at that address. When the CI called appellant to make a buy, agents in the area observed appellant leave and followed him to the drop off location which was a parking lot by 14th Street Northwest and Piper Court. The agents observed the CI enter appellant's vehicle and leave the same. The agents saw appellant travel back to the 26th Street Northeast address after the buy was completed. The CI was then taken to a secure location, searched and the recording device was recovered. The CI told them that he had purchased narcotics from appellant. A plastic bag of suspected heroin was taken and sent to the crime lab for analysis.

{¶7} A third buy occurred on November 27, 2017 in the parking lot of a BP located at Route 62 and Middlebranch. Once the CI, who was a different CI, was taken to that location, the agents set up surveillance on appellant's house and the BP station. They saw two vehicles parked there- a BMW that was used for the first two buys and 2003 Ford Taurus. After the CI was searched and the usual protocol was followed, the CI called appellant and arranged to make a buy at the BP station. The agents saw appellant leave the 26th Street residence in the Taurus, drive to the BP station and exchange a plastic bag with suspected heroin for the photographed money. The agents observed appellant in the Ford Taurus drive directly back to the 26th Street residence after the sale was completed.

{¶8} A fourth buy occurred on December 29, 2017. The CI submitted to the same protocol before the buy and sent a text message to appellant. The CI was told to go the Family Dollar at Harrisburg and Route 62, but was then advised to go to a gaming place off Route 62 and Harrisburg Road. The agents saw a silver Ford Taurus exit the driveway at the 26th Street address and followed appellant to the location where the buy was to take place. The CI later turned over a plastic bag of suspected heroin.

{¶9} On January 3, 2018, Agent Bays requested a search warrant for the 26th Street address. He prepared the affidavit based on the information from the four controlled buys. The affidavit described the buys and detailed the residence on 26th Street. After a search warrant was obtained, the house was searched and narcotics were recovered.

{¶10} After the trial court denied his Motion to Suppress, appellant entered a plea of no contest to the charges and was sentenced to a total of five years in prison.

{¶11} Appellant now appeals, raising the following assignment of error on appeal:

{¶12} "I. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS."

I

{¶13} Appellant, in his sole assignment of error, argues that the trial court erred in denying his Motion to Suppress. We disagree.

{¶14} Appellate review of a trial court's decision to deny a motion to suppress involves a mixed question of law and fact. *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1 (4th Dist.1998). During a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. *State v. Brooks*, 75 Ohio St.3d 148, 154, 1996-Ohio-134, 661 N.E.2d 1030. A reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Medcalf*, 111 Ohio App.3d 142, 145, 675 N.E.2d 1268 (4th Dist.1996). Accepting these facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court's decision meets the applicable legal standard. *State v. Williams*, 86 Ohio App.3d 37, 41, 619 N.E.2d 1141 (4th Dist.1993), overruled on other grounds.

{¶15} There are three methods of challenging a trial court's ruling on a motion to suppress on appeal. First, an appellant may challenge the trial court's finding of fact. In reviewing a challenge of this nature, an appellate court must determine whether the trial court's findings of fact are against the manifest weight of the evidence. *See State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141 (4th Dist.1991). Second, an appellant may argue the trial court failed to

apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. *See Williams, supra.* Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issues raised in a motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 96,620 N.E.2d 906 (8th Dist.1994).

**{¶16}** In the case sub judice, appellant argues that there was not probable cause for the issuance of the search warrant for appellant's residence. In authorizing a search warrant, the issuing magistrate's duty is to determine whether "there is a fair probability that contraband or evidence of a crime will be found in a particular place * * *." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *Jones* at ¶ 13. "[T]he duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for * * * conclud[ing]' that probable cause existed." *Gates* at 238-239, quoting *Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); *State v. Castagnola*, 145 Ohio St.3d 1, 2015-Ohio-1565, 46 N.E.3d 638, ¶ 35. Ordinarily, "a probable cause inquiry must be confined to the four corners of the affidavit." *State v. Klosterman*, 114 Ohio App.3d 327, 333, 683 N.E.2d 100 (2d Dist.1996). In reviewing whether a search warrant has been issued upon probable cause, courts must examine the totality of the circumstances. *Jones*, 143 Ohio St.3d 266, 2015-Ohio-483, 37 N.E.3d 123, at ¶ 15.

**{¶17}** Trial courts and appellate courts "should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area

should be resolved in favor of upholding the warrant." *State v. George*, 45 Ohio St.3d 325, 544 N.E.2d 640 (1989), paragraph two of the syllabus; *Jones*, 143 Ohio St.3d 266, 2015-Ohio-483, 37 N.E.3d 123, at ¶ 14.

**{¶18}** Appellant specifically argues that the information in the affidavit was stale and unreliable and the nexus between the home and drug sales lacked probable cause.

**{¶19}** We concur with appellee that the information in the affidavit for the warrant was not stale. An affidavit in support of a search warrant must present timely information and include facts so closely related to the time of issuing the warrant as to justify a finding of probable cause at that time — otherwise it is stale. *State v. Hollis*, 98 Ohio App.3d 549, 554, 649 N.E.2d 11 (11th Dist.1994), citing *State v. Jones*, 72 Ohio App.3d 522, 526, 595 N.E.2d 485 (6th Dist.1991).

**{¶20}** The question of staleness is not measured solely by counting the days between the events listed in the affidavit and the application for the warrant. *State v. Yanowitz*, 67 Ohio App.2d 141, 144, 426 N.E.2d 190 (8th Dist.1980). Ohio courts have instead identified a number of factors to consider in determining whether the information contained in an affidavit is stale, including the character of the crime; the criminal; the thing to be seized, as in whether it is perishable; the place to be searched; and whether the affidavit relates to a single isolated incident or ongoing criminal activity. *State v. Prater*, 12th Dist. Warren No. CA2001-12-114, 2002-Ohio-4487, ¶ 13.

**{¶21}** As noted by appellee, the affidavit was submitted to the issuing Judge on January 3, 2018. The affidavit outlined the four buys. The last buy occurred on December 29, 2019, just four days earlier.  We find that the information contained in the affidavit warrant was not too stale to support a finding of probable cause to search appellant's

home. The affidavit was based on ongoing criminal activity and was based on buys close in time to the issuance of the warrant and the search. There was a fair probability contraband would be present on the premises.

{¶22} Appellant also argues that the CI was not reliable because the CI was not known to Stark Metro prior and gave no intelligence regarding appellant's vehicle. However, Agent Bays testified that he reviewed the recording device to ensure that the information that the CI provided was correct and that he debriefed the CI after the buys. In addition, before any buy, the CI was searched for contraband/currency to ensure that the CI had nothing on his or her person and was outfitted with a recording device and given photocopied bills to make the buy.

{¶23} Appellant further argues that there was not a nexus between his home on 26th Street and the place of the drugs buys because none of the buys took place at the home. However, surveillance was set up on the home and when the CI made the call to buy drugs, appellant was seen getting into his vehicle at the address and traveling to the location of the drug buys. Metro agents observed appellant leave the 26th Street home after two different CIs made contact with appellant for a drug buy and appellant was observed returning to the address after drug sales. We find that this is a sufficient nexus to connect the residence with the drug dealing. There was probable cause to believe that appellant used his residence to store drugs.

{¶24} Based on the foregoing, we find that the trial court did not err in denying the Motion to Suppress. The information contained in the affidavit for the warrant was not too stale or unreliable based on the totality of the circumstances and established probable cause of an ongoing drug trafficking operation.

**{¶25}** Appellant's sole assignment of error is, therefore, sustained.

**{¶26}** Accordingly, the judgment of the Stark County Court of Common Pleas is affirmed.

By: Baldwin, J.

Hoffman, P.J. and

Delaney, J. concur.